UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H.D.V. - GREEKTOWN, LLC,
415 EAST CONGRESS, LLC, and K & P, Inc.,     Case number 06-11282
f/d/b/a/ Deja Vu, d/b/a Zoo Bar,

                                                    Honorable Julian Abele Cook, Jr.

                     Plaintiff,

v.

CITY OF DETROIT,
a Municipal Corporation,

                     Defendant.

## ORDER

On March 28, 2006, the Plaintiffs, H.D.V. - Greektown, LLC, 415 East Congress, LLC, and K & P, Inc.,[1] filed this lawsuit as a formal challenge to the constitutionality of the zoning ordinances within the City of Detroit.[2] On January 30, 2007, a motion for the entry of a partial summary judgment was filed by the Plaintiffs, in which they collectively asked the Court to (1) determine that the adult use provisions of the City's zoning ordinance are unconstitutional, (2) permanently enjoin the enforcement of these provisions by the City, and (3) declare that their operation of an adult cabaret is a lawful existing use. In its opposition papers, the City strongly disagrees, contending that the Plaintiffs' motion is without merit and should be rejected.

---

[1] Unless the Court utilizes any language to the contrary within the text of this order, the Court will identify the moving parties, H.D.V.– Greektown L.L.C., 415 East Congress, L.L.C., and K & P, Inc., as "the Plaintiffs."

[2] The Defendant, City of Detroit, will be referred to as "the City" in this order.

I.

K&P has operated a bar and nightclub in a building structure, which is owned by 415 East Congress, LLC, in downtown Detroit, Michigan since 1986. In 1994, K&P was granted a Cabaret D license by the City, which allowed it to offer topless female entertainment to its customers. Four years later, the Michigan legislature revised the State Liquor Control Code and, in so doing, created a "topless activity permit," which allowed an authorized business establishment to present topless female entertainment to the general public. Following its submission of an application, K&P was issued a topless activity permit by the Michigan Liquor Control Commission.

In 1999, the City modified its zoning ordinance with language that was designed to preclude the establishment of new adult businesses within Zone B6 of the Central Business District in downtown Detroit. The Zone B6 land in the Central Business District is a rectangular 68 acre area that is bounded by East Adams street on the north, St. Antoine street on the east, East Larned street on the south, and Brush street on the west. In a letter to the City Council, the City Planning Commission explained that:

> The Bricktown and Greektown People Mover stops in this area. This is a key area linking the future Lions football stadium, the temporary Greektown casino, and the General Motors Renaissance Center Complex. The B6 zoning district classification in this area may have made sense in the late 1960s when there were still wholesaling and freight operations on the east side of the [Central Business District]. The subsequent development of Greektown and Bricktown, however, has rendered B6 inappropriate.

Pl.'s Br., Exhibit B., p. 1.

The Plaintiffs' business, which was called "Legends" in 1999 and is now known as "The Zoo Bar," is located on Zone B6 land within the Central Business District. With the passage of the 1999 amended zoning ordinance, K&P's authority to conduct a topless entertainment business was "grandfathered" into this amended zoning ordinance as a lawful non-conforming use under Section

2

51.0000.[3]

On October 2, 2002, HDV entered into a conditional purchase agreement to acquire all of K&P's assets, including its liquor license, topless activity permit, and Cabaret D license. In mid-December 2002, HDV applied to the Michigan Liquor Control Commission for authority to utilize of all of the licenses and permits that had been issued to K&P.[4] After an initial assessment was completed by the Michigan Liquor Control Commission, K&P's application was forwarded to the City for its consideration. On June 24, 2003, HDV transmitted all of the documents, which ostensibly supported its transfer application, to the City's Consumer Affairs Department.[5]

K&P's transfer application was initially delayed when the City Council took the position that one of the conditions within its Cabaret D license allowed it to provide male – but not female – adult entertainment. In December 2003, the Plaintiffs filed a lawsuit, in which it (1) complained about the City's failure to act on its transfer application and (2) sought to obtain injunctive relief against the enforcement of "Condition 18."[6] However, the case was resolved upon the entry of an

---

[3]Section 51.0000 provided that "[a]ny nonconforming building, structure, or use, lawfully existing on the effective date of this Ordinance and which remains nonconforming, and any lawfully existing building, structure or use, which shall become nonconforming upon the adoption of this Ordinance, or any subsequent amendment thereto, may be continued, operated, occupied, or maintained subject to the provisions of this article."

[4]K&P possesses two Michigan Liquor Control Commission licenses; namely, a class C liquor license and a topless activity permit.

[5]The transfer application was initially forwarded to the City's Police Department, which issued a Liquor License Unit Referral on June 12, 2003. Thereafter, the transfer application was transmitted to the City's Consumer Affairs Department.

[6]An April 24, 1999 letter from the City to K&P provided conditional approval for its Cabaret D license. The letter also set forth multiple "conditions of approval," including Condition 18, which stated "that, at the request of the applicant, the type of entertainment allowed under the subject 'Adult Cabaret Use' be limited to that which would be considered similar to or comparable to a 'male review on ladies night' and not include the type of entertainment that would be considered

order which granted a declaratory judgment as to Condition 18, and dismissed all of the other pending claims without prejudice.

In 2003 and 2004, the City passed resolutions which applied to application requests for the approval (and/or transfer) of licenses that had been issued by the Michigan Liquor Control Commission, including topless activity permits. In essence, these resolutions provided that "if the bar making such a request is in a non-conforming use, located in a zoning district in which it is no longer permitted, the [Michigan Liquor Control Commission] petition would have a presumption of disapproval by the Council." (Pl.'s Brief, Exhibit I.)

On March 28, 2006, the Plaintiffs initiated this lawsuit. Approximately eight months later (November 15, 2006), the Plaintiffs' transfer application was rejected by the City Council.

## II.

Detroit's zoning ordinance, which is currently under scrutiny, categorizes all parcels of land into four general districts: residential, business, industrial, as well as special and overlay areas.[7] Within each of these four zoning districts, uses are authorized as a matter of right,

---

similar to or comparable to a 'topless go-go-bar.'" Pl.'s Brief, Exhibit A.

[7]These general zoning categories are further divided into smaller districts.
Residential Districts are divided into single-family (R1), two-family(R2), low density (R3), thoroughfare(R4), medium density(R5), and high density(R6).
Business Districts are divided into several groupings: namely, restricted (B1), local business and residential (B2), shopping (B3), general business (B4), major business (B5), and general services (B6).
Industrial Districts are divided as follows: limited industrial (M1), restricted industrial (M2), general industrial (M3), intensive industrial (M4), and special industrial (M5).
Special Districts and Overlay Areas are divided into planned development (PD), open parking (P1), public center (PC), restricted central business (PCA), transitional-industrial(TM), parks and recreations (PR), waterfront-industrial (W1), special development, residential/commercial (SD1), special development, commercial/residential (SD2), special development, technology and research (SD3), special development, riverfront mixed use (SD4), special development, casinos

4

conditionally allowed, permitted subject to approval by the City Council, or rejected entirely. Adult cabarets are authorized in only five specific zoning districts. They are permitted as conditional uses in the General Industrial District (M3), the Intensive Industrial District (M4), the Special Industrial District (M5), and the General Services District (B6)[8] They are also permitted to operate in the Planned Development District (PD) subject to the approval by the City Council. There is no zoning district within the City whereby an adult cabaret may conduct its business as a matter of right.

In order to receive permission to open an adult cabaret in the M3, M4, M5 and B6 districts, an aspiring business owner must first submit an application and related materials, including site plans, floor plans, and elevations to the City's Buildings and Safety Engineering Department. Thereafter, the Planning and Development Department must determine whether to grant its preliminary approval of the site plan. If the preliminary approval is granted, the Buildings and Safety Engineering Department staff is obliged to review the application by conducting field inspections, surveys, and investigations, and preparing maps, charts or other pertinent material. Next, a notice of a public hearing must be published, and followed by a mandatory public hearing. Finally, a conditional use is granted only if positive conclusions are drawn from fifteen general findings.[9] Even if a property is granted a conditional use, the Buildings and Safety Engineering

---

(SD5).

[8]However, they are not authorized in the B6 Central Business District (downtown Detroit), where the Plaintiffs' business is 415 E. Congress is located.

[9]Section 61-3-231 of the City Zoning Ordinance reads as follows:

No conditional use shall be approved by the Buildings and Safety Engineering Department, or the Board of Zoning Appeals on Appeal, unless each of the following general findings is made:
1. The establishment, maintenance, location, and operation of the proposed Conditional Use will not be detrimental to or endanger the social, physical, environmental or economic well

Department may impose other conditions that it may deem to be necessary.[10] However, there is no

---

        being of surrounding neighborhoods, or aggravate any preexisting physical, social or economic deterioration of surrounding neighborhoods; and

2. The Conditional Use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes permitted; and
3. The Conditional Use will be substantially diminish or impair property values within the neighborhood; and
4. The Conditional Use shall not be inconsistent with the goals and objectives of the City of Detroit Master Plan; and
5. The establishment of the Conditional Use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district. Plans for such development and improvement shall be evidenced in a written or published community plan, development plan, cluster board plan, or similar document; and
6. Adequate utilities, access roads, drainage, and other necessary facilities have been or will be provided; and
7. The Conditional Use will be compatible with the capacities of public services and public facilities that are affected by the proposed use; and
8. The Conditional Use will be compatible with land uses on adjacent and nearby zoning lots in terms of location, size, and character. For purposes of this section, 'nearby zoning lots' shall mean those lots of the same side of the same block face as the subject property; and
9. The Conditional Use will not hinder or have a detrimental effect upon vehicular turning patterns, ingress/egress, traffic flow, nearby intersections, traffic visibility and the clear vision triangle, and other vehicular and pedestrian traffic patterns in the vicinity; and
10. The Conditional Use will in all other respects conform to the applicable use regulations, dimensional requirements, general development standards, and any other applicable requirement of this Zoning Ordinance. In the Event a dimensional or other variance is needed, the B&SE may approve the Conditional Use contingent on approval of the need variance for the Board of Zoning Appeals as provided for in Sec. 61-3-219 of this Code; and
11. The Conditional Use is consistent with any approved preliminary site plan; and
12. The Conditional Use is so designed, located, planned, and to be operated so that the public health, safety, and welfare will be protected; and
13. The Conditional Use shall not involve activities, processes, materials, equipment or conditions of operation that will be detrimental to the physical environment or to public health and general welfare by reason of excessive production of noise, smoke, fumes, glare, or odors; and
14. The Conditional Use is consistent with and promotes the intent and purpose of this Chapter; and
15. Where a public, civil, or institutional use (See ARTICLE XII, DIVISION 1, Subdivision C) is proposed on land zoned industrial, the impacts of the normal operations that are allowed in the district, including noise, smoke, fumes, glare and odor, shall not adversely affect the employees, patrons, or users of the proposed public, civic, or institutional facility.

provision which specifies the amount of time within which the Planning and Development Department must take to issue a decision on a preliminary site approval. Moreover, there is no time limit that is imposed upon the Buildings and Safety Engineering Department to hold a public hearing or issue a final ruling.

The only other zoning district in which adult cabarets are permitted to locate is in the Planned Development (PD) District. All uses in the PD district must (1) receive approval by the City Council, and (2) be in accordance with the "goals and objectives of the Master Plan." In addition, adult cabarets are considered to be "regulated uses" and are subject to an additional approval process. All regulated uses must receive approval by the City Council. This approval process for regulated uses is similar to that of conditional uses and requires a preliminary site approval plan, a public hearing, and approval by the Buildings and Safety Engineering Department. Significantly, there is no limitation on the amount of time that the Buildings and Safety Engineering Department can take prior to rendering its approval of a regulated use.

### III.

In 1986, the Supreme Court opined that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Federal Rule of Civil Procedure 56(c) indicates that a motion for a summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to

---

[10]Sec. 61-3-241 (p. 81) states that the B&SE "may impose reasonable conditions or limitations upon the establishment, location, construction, maintenance, or operation of the Conditional Use as may be necessary, in its judgment, for the protection of the public interest, health safety, welfare and environment, and to secure compliance with the approval criteria of . . . this Chapter."

a judgment as a matter of law." Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). Thus, it is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). However, the presentation of a mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

IV.

In this motion for summary judgment, the Plaintiffs challenge the constitutionality of the

adult use provisions of City's zoning ordinance. In response, the Defendants assert that the Plaintiffs lack standing to challenge the constitutionality of the entire ordinance because this case involves a challenge to the denial of a transfer of a Michigan Liquor License Commission license - not a zoning regulation.

Article III of the United States Constitution limits the jurisdiction of federal courts to justiciable "cases or controversies." *Whitmore v. Arkansas*, 493 U.S. 149, 155 (1990). However, when a licensing scheme creates a prior restraint, a facial constitutional challenge – though generally disfavored – may be allowed. Nevertheless, such an issue is raised in a First Amendment context wherein the licensing scheme vests an unbridled discretion in the decision maker. *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984), *FW/PBS, Inc. V. City of Dallas*, 493 U.S. 215, 223. A facial challenge is deemed to be appropriate because "every application of the [law] create[s] an impermissible risk of suppression of ideas."*Id.* at 225-26. In *FW/PBS*, the Supreme Court found that those petitioners, who were associated with a sexually oriented business, could raise a facial constitutional challenge to a municipal licensing ordinance on First Amendment prior restraint grounds. *Id.* In its decision, the *FW/PBS* Court reasoned that the challenged ordinance had vested an "unbridled discretion" in the licensor, noting that there was no time limit during which the licensing authority was required to act. *Id.* The Supreme Court declared in *Freedman v. Maryland*, 380 U.S. 51, 56 (1965):

> In the area of freedom of expression, it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office. . . whether or not he applied for a license.

Here, the Plaintiffs have challenged the constitutionality of the adult use provisions of the City's zoning ordinance. It is their collective view that such provisions vest a constitutionally

9

deficient discretionary authority in the hands of the City officials, who have no time constraints imposed upon them to evaluate an application or to render a decision. In bringing this challenge, the Plaintiffs need not first apply for a permit (or in this case, approval to open an adult cabaret) as a prerequisite to litigating these claims.

V.

If the enjoyment of a constitutionally protected activity is contingent upon the prior approval of government officials, such as a permit to engage in speech or expression, a prior restraint exists. The Plaintiffs argue that the provisions within the challenged zoning ordinance require potential adult business owners to obtain two levels of approval from the City. First, adult businesses may only operate in the City as "conditional uses" in the M3, M4, M5 and B6 districts in which they must undergo an approval process prior to opening their doors to the general public. In addition, all adult businesses are considered to be "regulated uses" under Zoning Ordinance Sec. 61-03-251 and must receive approval from City Council before operating.

The City submits that its zoning ordinances should not be evaluated under the prior restraint standard. Rather, it argues that these zoning ordinances should be analyzed as a content-neutral time, place and manner regulation, citing *Renton v. Playtime Theaters*, 475 U.S. 41, 46-47 (1986). In *Renton*, the Supreme Court used the time, place and manner standard to evaluate the zoning ordinance which was then at issue. However, in *Renton*, the zoning ordinance placed geographic restrictions upon the location of adult businesses. In contrast with this case, an elaborate system of approval is required before a potential adult business is permitted to open its doors. Thus, the Court believes that this case should be evaluated under the prior restraint analysis.

Prior restraints on speech carry a presumption of invalidity. First, a prior restraint is

unconstitutional if it places "unbridled discretion in the hands of a governmental official or agency . . . ." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. at 225-26 (1990). In order to be constitutional, prior restraints must have specific standards to guide the decision-maker in judging whether a permit should issue. *City of Lakewood v. Plain Dealer Publ'g Co*., 486 U.S. 750, 757-8 (1998). Second, a "prior restraint that fails to place limits on the time within which the decision-maker must issue the license is impermissible." *FW/PBS,* 493 U.S. at 226. Here, the Plaintiffs argue that the adult use provisions of the City's zoning ordinance violate both facets of prior restraint jurisprudence; namely, they impermissibly place unbridled discretion in the hands of City officials, and also fail to mandate a prompt application decision as required by *Freedman v. Maryland* , 380 U.S. 51 (1965)

In order to obtain permission to operate an adult business in Detroit, an applicant must receive two types of approval, as both a regulated use or a conditional use. All new adult businesses in Detroit require approval from the City Council. Conditional use approval requires that the Buildings and Safety Engineering Department make fifteen affirmative findings, including an assessment as to whether the use will be consistent, compatible, or appropriate with the surrounding area and other businesses. These criteria give impermissibly vest broad discretion to the City and its officials.

More troubling, however, is that the adult use provisions of the City's zoning ordinance provide no limitations of time upon the reviewing authorities to render an official approval or disapproval. The Supreme Court has mandated that in cases involving prior restraint, "the licensors must make the decision whether to issue the license within a specified and reasonable time period. . . ." *FW/PBS*, 493 U.S. at 228, *Freedman, supra.* The conditional use, the planned development,

11

and the regulated use provisions of the challenged zoning ordinance fail to provide any deadlines whatsoever for the granting or the denying of applications by the appropriate governmental body. Under *Freedman*, those regulations, which constitute prior restraint, must contain reasonably short deadlines for making decisions. The record in this case clearly demonstrates that the City's zoning ordinance contains no such deadlines. Hence, the Court must, and does, conclude that the challenged terms and conditions of the City's zoning ordinance violate the First Amendment of the U.S. Constitution.

In its motion for summary judgment, the Plaintiffs also requested that the Court permanently enjoin the enforcement of these provisions by the City, and declare that their operation of an adult cabaret is a lawful existing use. However, the Court will deny this portion of the Plaintiff's motion without prejudice, finding that taking such steps, at this point, is not necessary. Instead, the Court directs the City to revise its zoning ordinance forthwith to bring it into compliance with the First Amendment. Accordingly, and for the reasons stated above, the Court grants the Plaintiffs' motion for summary judgment in part, finding that the adult use provisions of the City's zoning ordinance are unconstitutional. However, the Court denies the Plaintiffs' remaining requests without prejudice.

IT IS SO ORDERED.

Dated: August 6, 2007                                                s/ Julian Abele Cook, Jr.
      Detroit, Michigan                                       JULIAN ABELE COOK, JR.
                                                                                United States District Court Judge

Certificate of Service

I hereby certify that on August 6, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                        s/ Kay Alford

                                        Courtroom Deputy Clerk