UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


H.D.V. – GREEKTOWN, LLC, et al.,

        Plaintiffs,

v.

                                    Case No. 06-11282

CITY OF DETROIT,                       Honorable Julian Abele Cook, Jr.

        Defendant.


## ORDER

This case pertains to claims by the Plaintiffs, H.D.V. – Greektown, LLC ("HDV"), 415 East Congress, LLC ("415 East Congress"), K&P, Inc. ("K&P"), and four unnamed individuals,[1] that the Defendant, the City of Detroit ("City"), had infringed upon their constitutional rights in connection with the enforcement of its zoning laws. These allegations have been denied by the City.

The Plaintiffs' third motion for the entry of a partial summary judgment is now before the Court for its evaluation and decision.

## I.

The Plaintiff, 415 East Congress LLC, is the owner of property at 415 East Congress in Detroit, Michigan. Another Plaintiff, K&P, has been the occupant and lessee of this East Congress

---

[1]Collectively, the corporate Plaintiffs will be identified in this memorandum as "the Plaintiffs." The four individual Plaintiffs will be referred to as Jane Roe I, Jane Roe II, Jane Roe III, and Jane Roe IV. Even though Jane Doe I et al have been described in the complaint as representing a class of persons who are similarly situated to them, the Court has not certified this litigation as a class action lawsuit.

property since 1996 and is the site where adult entertainment has been provided to its bar and nightclub customers for over a decade pursuant to a Group D Adult Cabaret license ("Cabaret D license") from the City. A third Plaintiff, HDV, is a corporate business entity which seeks to acquire

all of K&P's assets, including its liquor license and a topless entertainment permit.

The anonymous Plaintiffs (i.e., Jane Roe I - IV) are persons who have performed, and in some cases continue to perform, as dancers. However, it should be noted that only the corporate Plaintiffs are directly involved in the now pending partial summary judgment motion before the Court.

The Defendant, the City of Detroit, is a constitutionally authorized municipality of the State of Michigan government.

In 1998, the Michigan legislature revised its Liquor Control Code and created a topless activity permit which allowed the presentation of female topless entertainment by those businesses that were licensed to sell liquor on their premises. K&P - already in possession of a liquor license - applied for, and obtained, a topless activity permit from the Michigan Liquor Control Commission

In 1999, the City revised its zoning ordinance ("Zoning ordinance") to further regulate the location of adult entertainment businesses, which included the placement of their location on land in zone B6 within the Central Business District of Detroit. The B6 land is a rectangular sixty eight acre area in the downtown area of Detroit (and includes the premises at 415 E. Congress). Inasmuch as K&P's business was located in the B6 area within the Central Business District at the time that the City revised the Zoning ordinance, it became a lawful nonconforming use. As such, K&P was

allowed to continue as a "grand fathered" nonconforming use pursuant to Section 51.0000[2] of the then-existing Zoning ordinance.

On October 2, 2002, HDV entered into a conditional purchase agreement to purchase of all of K&P's assets, including its liquor license, topless activity permit, and Cabaret D license. Nearly two months later (December 13th), HDV applied to the Michigan Liquor Control Commission for authority to transfer of all of its licenses in the possession of K&P (i.e., the liquor license and the topless activity permit). The City took the position that this transfer application had to be approved by the City Council. After HDV received its approval from the Michigan Liquor Control Commission and the Detroit Police Department, the transfer application was forwarded to the City's Consumer Affairs Department for subsequent transmittal to the City Council. Thereafter, HDV submitted all of the necessary documents in support of its transfer application to the City on June 24, 2003.

K&P's transfer application was initially delayed when the City Council asserted that the issuance of the Cabaret D license had been conditioned on its recipient (i.e., K&P) providing only male adult entertainment. This condition came later to be known as "Condition 18." When a dispute among the parties arose over this decision by the City Council, litigation followed. The parties eventually reached a settlement which resulted in a declaratory judgment being awarded to the Plaintiffs as it related to Condition 18 along with a dismissal of the remaining claims without prejudice. This settlement was intended by the parties to be the procedural mechanism through

---

[2] This provision stated: "Any nonconforming building, structure, or use, lawfully existing on the effective date of this Ordinance and which remains nonconforming, and any lawfully existing building, structure, or use, which shall become nonconforming upon the adoption of this Ordinance, or any subsequent amendment thereto, may be continued, operated, occupied, or maintained subject to the provisions of this article."

which the City Council would be able to consider HDV's transfer application in light of Condition 18.

The City Council did not take up HDV's transfer application for nearly three years. Instead, it passed resolutions ("Procedures and Criteria for the Approval/Disapproval of Michigan Liquor Control Commission Activity Permits") in 2003 and 2004, both of which applied to applications for the transfer of liquor licenses and related permits, such as topless activity permits.[3] These resolutions declared that if the City Council was faced with a decision as to whether applications for new Michigan Liquor Control Commission licenses or if those who seek authority to obtain the transfer of existing licenses should be granted or denied, it should attempt to determine "if the bar making such a request is a nonconforming use, located in a zoning district in which it is no longer permitted, the Michigan Liquor Control Commission petition would have a presumption of disapproval by the Council."

In March 2006, while awaiting a decision from the City Council in connection with HDV's transfer application, the Plaintiffs filed a second lawsuit against the City. Several months later - on November 15, 2006 - the City Council voted to reject HDV's transfer application.

## II.

On August 6, 2007, the Court entered an order which granted in part, and denied in part, the Plaintiffs' motion for partial summary judgment relating to the adult use provisions within the City's zoning ordinance. In rendering its decision, the Court agreed with the Plaintiffs who had contended that the City's adult use provisions were facially unconstitutional but, at the same time,

---

[3] The City has since modified its Procedures and Criteria resolution, and issued a revision in August 2009.

it declined to grant their request for injunctive and declaratory relief. On February 7, 2008, the Court entered an order which, *inter alia*, denied the Plaintiffs' motion to alter or amend the August 6th directive, as well as the City's motion for reconsideration.[4]

Feeling aggrieved by the August 6th decision, the Plaintiffs appealed to the Sixth Circuit Court of Appeals (Sixth Circuit), seeking an appellate review of the declination by this Court to grant their request for injunctive and declaratory relief. On June 12, 2009, the Sixth Circuit declared that "so long as the district court continues to hold the ordinances unconstitutional, its failure to declare K&P's use of the Premises lawful constitutes an abuse of discretion." *H.D.V. – Greektown v. City of Detroit*, 568 F.3d 609, 620 (6th Cir. 2009). The City's request for a rehearing was rejected by the Sixth Circuit on August 17th.

On August 27, 2009, the Court entered an order which implemented the directives in the Sixth Circuit's opinion of June 12th, in that it granted the Plaintiffs' request to enjoin the City from enforcing the adult use provisions within its zoning ordinance and declared K&P's business (i.e., an adult cabaret) to be a lawful conforming use.

On September 25, 2009, the City filed a motion, seeking to revise the August 6, 2007 order pursuant to Fed. R. Civ. P. 54, which was vehemently opposed by the Plaintiffs. On October 27th, the Plaintiffs filed their third motion for partial summary judgment, to which the City expressed its opposition. The Court, after hearing oral argument on these two motions, entered an order which denied the City's motion to revise.

---

[4] In its response to the Plaintiffs' motion to alter or amend the judgment of September 18, 2007, the City requested the Court to clarify its August 6th order. In construing this request as a motion for reconsideration, the Court denied it as being untimely. *See* E.D. Mich. LR 7.1(g)(1) (motion for reconsideration must be filed within 10 days after the entry of a judgment or order).

III

A party is entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©).  If a litigant shows that there is no triable issue for a fact finder to decide on a particular element of the claim, the opposing party must rebut this showing by "offering affirmative evidence from which a reasonable fact finder could find in his favor." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  However, the trial court must view the evidence in the light that is most favorable to the non-moving party. *Id.*  (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

IV.

In the State of Michigan, an establishment that has been licensed to sell alcohol for on-premises consumption must obtain a permit before presenting a "topless activity" in the following manner:

> An on-premises licensee shall not allow topless activity on the licensed premises unless the licensee has applied for and been granted a topless activity permit by the commission. This section is not intended to prevent a local unit of government from enacting an ordinance prohibiting topless activity or nudity on a licensed premises located within that local unit of government.

Mich. Comp. Laws § 436.1916(3).  The specific approval process for a licensee to obtain entertainment permits and topless activity permits is set forth in the subsection (10) of the same statute:

> Before the issuance of any permit under this section, the on-premises licensee shall obtain the approval of all of the following:

6

(a) The commission.
(b) Except in cities with a population of 1,000,000 or more, the local legislative body of the jurisdiction within which the premises are located.
©) The chief law enforcement officer of the jurisdiction within which the premises are located or the entity contractually designated to enforce the law in that jurisdiction.

*Id.* at (10).  In this case, the City has taken the position that the approval by its City Council is required under Mich. Comp. Laws § 436.1916(10)(b) before an entity may be granted an entertainment permit or a topless activity permit.  Acting on the basis of this authority, the City passed its Procedures and Criteria for Michigan Liquor Control Commission Activity Permits resolution ("2003 Procedures and Criteria") on August 1, 2003.  This 2003 Procedures and Criteria resolution states as follows:

**1.      Police Approval**
If the Detroit Police Department has recommended approval, City Council **may** further consider the petition for approval.  If the Police Department has recommended disapproval, City Council **will consider** voting to disapprove the petition.

**2.      Violations and Delinquencies**
If the Buildings and Safety Engineering Department, or other City department, has indicated that no unresolved violations or delinquencies exist against te premises or the operator, then City Council **may** further consider the petition for approval.  If there are unresolved violations or delinquencies against the property, City Council **will consider** deferring action or **may** vote to disapprove the petition.

**3.      Compliance with Zoning Grants**
If the Buildings and Safety Engineering Department has indicated that the premises are in compliance with all applicable conditions of any zoning grant, then City Council **may** further consider the petition for approval.  If the premises are not in compliance with zoning grant conditions, City Council **will consider** deferring action or **may** vote to disapprove the petition.

**4.      Other Information Regarding Conforming Uses**
With regard to conforming uses, if other information comes to light that was not reflected in departmental reports to City Council, and such information challenges the suitability of the premises in question or the licensee, City Council **will consider** deferring action or **may** vote to disapprove the petition.  Absent such information,

City Council **will consider** voting to approve the petition.

**5.      Nonconforming Use Status**
In light of City Council's intent to not lengthen the life of nonconforming uses, City Council **will** promptly provide an opportunity for the petitioner to come before City Council, prior to City Council action with regard to:

1.    A petition for an Michigan Liquor Control Commission dance permit involving a nonconforming Class "C" bar use;

2.    A petition for an Michigan Liquor Control Commission entertainment permit involving a nonconforming "nightclub" use, or other nonconforming Class "C" bar that has held a Consumer Affairs "cabaret" license since prior to 02 August 1993;

3.    A petition for an Michigan Liquor Control Commission topless activity permit involving a nonconforming "adult cabaret."

If Criteria 1, 2, and 3 have been met and if information is received by City Council that is sufficient to overcome the presumption against lengthening the life of the nonconforming use, the City Council **may** vote to approve the petition.

If information received by City Council is insufficient to overcome the presumption against lengthening the life of the nonconforming use, the City Council **may** vote to disapprove the petition and set forth reasons for said disapproval in its resolution.

(Pfs.' Ex. C) (emphasis in original).

A.

The Plaintiffs take the position that the restrictions within the 2003 Procedures and Criteria resolution are unconstitutional prior restraints on their First Amendment protected activities. The City, on the other hand, submits that the 2003 Procedures and Criteria resolution does not seek to restrict any protected activity because a topless activity permit is, in actuality, an authority and a prerequisite to sell liquor. Thus, the City urges the Court to analyze the 2003 Procedures and Criteria  resolution as a content-neutral time, place, and manner regulation.

In 2007, the Sixth Circuit Court of Appeals ("Sixth Circuit"), declared "[t]he Supreme Court has stated that 'nude dancing . . . is expressive conduct,' while nudity itself is not." *Hamilton's*

*Bogarts, Inc. v. Michigan*, 501 F.3d 644, 651 (6th Cir. 2007).[5] Thus, the laws which limit this type

of expression are subject to "First Amendment scrutiny under one of two alternative standards of

review." *Id.* If the regulation at issue is unrelated to the suppression of expression, it is reviewed

under the intermediate scrutiny inquiry as outlined in *United States v. O'Brien*, 391 U.S. 367 (1968).

On the other hand, if the regulation is related to the content of the expression, it is subject to strict

judicial scrutiny. *Id.*

In 1996, the Supreme Court concluded that "the State has ample power to prohibit the sale

of alcoholic beverages in inappropriate locations[, and that] the States' inherent police powers

provide ample authority to restrict the kind of 'bacchanalian revelries' described in the *LaRue*

opinion regardless of whether alcoholic beverages are involved." *44 Liquormart v. Rhode Island*,

517 U.S. 484, 515 (1996) (citing *California v. LaRue*, 409 U.S. 109, 118 (1972)). Although the

Court in *44 Liquormart* disavowed *LaRue*'s reasoning which grants broad discretion to states under

the Twenty-First Amendment to regulate the locations where alcohol is sold, it did not "question[]

the holding" that the regulation in *LaRue* was not violative of the First Amendment. *Id.* Indeed,

the Sixth Circuit Court of Appeals has determined that "*Liquormart*'s reaffirmation of *LaRue*'s

holding . . . mean[s] that the *LaRue* regulations would have survived intermediate scrutiny." *Odle*

*v. Decatur County*, 421 F.3d 386, 399 (6th Cir. 2005).

Although the Plaintiffs submit that their free speech rights are restricted by the conditions

which have been established for applicants to seek a topless activity permit, they are only required

to obtain this permit because of their desire to serve liquor on the premises. As recognized by the

_____

[5] The protected activity here is topless dancing, which is also constitutionally protected
under the First Amendment. *G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d
1071, 1075 n.1 (6th Cir. 1994).

Supreme Court in *LaRue*, "the critical fact is that [the governmental entity] has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink." 309 U.S. at 118. Indeed, several other courts have held that governmental entities even have the power to ban adult entertainment at those businesses where alcohol is served and consumed if the regulation withstands intermediate judicial scrutiny. *See, e.g., Sammy's Ltd. v. City of Mobile*, 140 F.3d 993, 995-96 ("Although such ordinances regulate expressive conduct, the [Supreme] Court has determined that they are content-neutral and should be reviewed under the intermediate level of scrutiny articulated in *United States v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968)."); *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 722 (7th Cir. 2003) (court applied intermediate scrutiny to ordinance prohibiting the sale, use, or consumption of alcohol on premises of "sexually oriented businesses.")

That is the situation in the case at bar where Michigan and the City have decided that liquor licensees must first obtain a permit before offering topless entertainment to its customers.[6] As the City correctly notes, this scheme does not prevent the Plaintiffs from offering topless entertainment on their premises as long as alcohol is neither sold nor offered for sale. Accordingly, the Court will analyze the regulations at issue under the intermediate scrutiny test in *O'Brien*, and as modified by subsequent Supreme Court and Sixth Circuit precedent.

B.

The intermediate scrutiny test, which has been established by the *O'Brien* court, requires the governmental entity to demonstrate that

---

[6] Although the Plaintiffs intimate that § 916 of the Michigan Liquor Control Code, Mich. Comp. Laws § 436.1916, may be an unconstitutional prior restraint, this is not a question before the Court and, as such, it will decline to address this question.

(1) the regulation is within the constitutional power of the government to enact, (2) the regulation furthers an important or substantial government interest, (3) the government interest must be unrelated to the suppression of free expression, and (4) the restriction must be no greater than is essential to the furtherance of the government interest.

*Hamilton's Bogarts, Inc.*, 501 F.3d at 653 (citing *City of Erie v. Pap's AM*, 529 U.S. 277, 296-301 (2000)).

First, the City argues that it had authority to pass the 2003 Procedure and Criteria resolution because of (1) the "comprehensive home rule power conferred on it by the Michigan Constitution" and (2) the power vested by the Michigan Liquor Control Commission in local authorities to approve or disapprove its activity permits. The Plaintiffs claim that the City has no authority to "eliminate nonconforming uses upon a change in ownership necessitating a permit transfer," citing Mich. Comp. Laws § 125.3208.[7] However, this statute does not necessarily address whether, and under what circumstances, a local government may deny the transfer of an activity permit for a business that serves liquor and operates with a liquor license under the Michigan Liquor Control Code.

Furthermore, the City has proffered two Michigan cases wherein the courts have upheld

---

[7] This statute provides, in part:
(1) If the use of a dwelling, building, or structure or of the land is lawful at the time of enactment of a zoning ordinance or an amendment to a zoning ordinance, then that use may be continued although the use does not conform to the zoning ordinance or amendment.
. . .
(2) The legislative body may provide in a zoning ordinance for the completion, resumption, restoration, reconstruction, extension, or substitution of nonconforming uses or structures upon terms and conditions provided in the zoning ordinance.
   (3) The legislative body may acquire, by purchase, condemnation, or otherwise, private property or an interest in private property for the removal of nonconforming uses and structures. . . .

municipal ordinances that attempt to limit the continued existence of nonconforming uses. Many decades ago, the Michigan Supreme Court upheld the City of Ypsilanti's zoning ordinances that were aimed at limiting the expansion of nonconforming uses. *Austin v. Older*, 278 N.W. 727, 729 (Mich. 1938). In 1968, the Michigan Court of Appeals in *Mazo v. Detroit*, held that "[t]he city may legitimately use its ordinance to improve the condition of a neighborhood by refusing to authorize new nonconforming uses." 156 N.W.2d 155, 160 (Mich. Ct. App. 1968) (citing *Austin v. Older*). Moreover, the City points out that the Michigan Liquor Control Code explicitly grants the City the authority to approve or deny petitions related to Michigan Liquor Control Commission activity permits. Indeed, § 916(10)(b) states that an on-premises licensee must procure the approval of "the local legislative body of the jurisdiction within which the premises are located." Thus, based on the applicable case law and the Michigan Liquor Control Code, it appears that the City does have the authority to regulate nonconforming uses which, in turn, does satisfy the first factor under *O'Brien*.

Second, the City maintains that it has a "substantial interest in regulating businesses which sell alcohol, particularly sexually-oriented businesses which do so," citing the Supreme Court cases of *44 Liquormart* and *LaRue* (discussed above). In addition, the City argues that it was also proper to consider the nonconforming use status of a business because municipalities have an important governmental interest in regulating and limiting these uses over time.[8] The Plaintiffs disagree,

_____

[8] The Resolution which adopted the 2003 Procedures and Criteria states, in part:

> [T]he Detroit City Council shall *routinely consider nonconforming status when considering approvals for* sales of City-owned land; the closures of streets or alleys; tax abatements; special zone or area designations or certification; *Liquor Control Commission dance, entertainment, dance-entertainment, or topless activity permits*; and other matters requiring City Council action[.]

(Pfs.' Ex. D) (emphasis added).

asserting that (1) the claim of limiting the nonconforming use does not test the reasonableness of the restriction and (2) any restrictions on nonconforming uses must be done "via the narrow methods specifically delineated by statute." However, the Plaintiffs' argument misses the mark on this issue and is more pertinent to the third factor (narrow tailoring). The Supreme Court has recognized that "the city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect. Moreover, the city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 71 (1976).

However, the Sixth Circuit decreed that "the kind of evidence required to establish that a regulation furthers a substantial government interest depends on [the] character of the interest." *Richland Bookmart, Inc. v. Knox County, Tenn.*, 555 F.3d 512, 522 (6th Cir. 2009). Where there is a content-neutral regulation of conduct, such as the prohibition of the destruction of draft cards in *O'Brien*, the governmental entity need not present evidence which demonstrates that the threatened harm was real. *Id.* (citing *Pap's AM*, 529 U.S. at 299). On the other hand, if the regulation is a content-neutral time, place, and manner restriction on speech, the governmental entity must "have had a reasonable evidentiary basis for concluding that its regulation would have the desired effect. Although not extraordinarily high, this evidentiary burden requires that the entity show that the evidence upon which it relied was reasonably believed to be relevant to the problem that the entity sought to address." *Id.* (quoting *729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485, 490-91 (6th Cir. 2008)).

In this case, the language in the 2003 Procedures and Criteria resolution does not appear to regulate conduct, but rather the place where topless activity - and other types of activities - can be

performed (i.e., at liquor licensed premises where there are no violations or delinquencies and, under certain circumstances, at businesses that have a nonconforming status).

Here, it is not entirely clear what the City's substantial government interest actually is. It first states that it has a substantial interest "in regulating businesses which sell alcohol, particularly sexually-oriented businesses which do so." It also asserts that it has an important interest in regulating nonconforming uses. Finally, the City argues that if the 2003 Procedures and Criteria resolution is construed as regulating adult entertainment, it also has a substantial governmental interest in preventing the negative secondary effects that are associated with sexually-oriented businesses. In support of this position, the City has cited several Supreme Court and Michigan cases that have recognized local government interests in (1) regulating businesses that sell liquor, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996); (2) regulating and limiting nonconforming uses, *Austin v. Older*, 278 N.W. 727 (Mich. 1938); and (3) preventing the negative secondary effects of adult entertainment, *Young v. American Mini Theaters*, 427 U.S. 50 (1976). However, the City does not explain how the 2003 Procedures and Criteria resolution will further any of these various governmental interests. The Sixth Circuit has determined that "local governments need not conduct their own studies" and may rely on judicial opinions, *see Richland Bookmart, Inc.*, 555 F.3d at 524-25. Thus, the Court will assume, *in arguendo*, that the City has met its initial evidentiary burden of setting forth an important governmental interest that is advanced by this regulation.

The third factor requires that the governmental interest be unrelated to the suppression of free expression. The City argues that, in passing the 2003 Procedures and Criteria resolution, it sought to (1) establish guidelines to review requests for the issuance or transfer of Michigan Liquor Control Commission activity permits and (2) "eliminate the indefinite continuation of nonconforming uses."

14

However, it does not appear that this 2003 Procedures and Criteria resolution, as written, was designed to suppress protected speech.

Turning to the fourth *O'Brien* factor (i.e., the restriction must be no greater than is essential to the furtherance of the government interest), the City generally argues that the restrictions within the 2003 Procedures and Criteria resolution are narrowly tailored and do not prohibit protected expressions (e.g., they do not prevent adult entertainment from being offered). However, the Plaintiffs offer a different viewpoint when they assert that the City has failed to satisfy this narrow tailoring requirement because Sections 2 and 4 "operate in a nonsensical manner." These sections, which have been criticized by the Plaintiffs, are as follows:

> **2.      Violations and Delinquencies**
> If the Buildings and Safety Engineering Department, or other City department, has indicated that no unresolved violations or delinquencies exist against te premises or the operator, then City Council **may** further consider the petition for approval. If there are unresolved violations or delinquencies against the property, City Council **will consider** deferring action or **may** vote to disapprove the petition.

> **4.      Other Information Regarding Conforming Uses**
> With regard to conforming uses, if other information comes to light that was not reflected in departmental reports to City Council, and such information challenges the suitability of the premises in question or the licensee, City Council **will consider** deferring action or **may** vote to disapprove the petition. Absent such information, City Council **will consider** voting to approve the petition.

(Pfs.' Ex. C) (emphasis in original).

The Plaintiffs submit that Section 2 does not pass the narrow tailoring test because it allows the denial of an application in which there are "unresolved violations or delinquencies" but not in those situations in which there are established violations or delinquencies. Likewise, they claim that Section 4 is constitutionally defective because it authorizes the rejection of transfer applications which are based on the actions of the non-applicant transferor, as opposed to the applicant

transferee.

The Court agrees with the Plaintiffs that these provisions are not sufficiently narrow to advance the stated governmental interests (i.e., limit the secondary effects of adult businesses and the continued existence of nonconforming uses). On the basis of the language in the 2003 Procedures and Criteria resolution, it is not clear if and when the City Council will consider a petitioner's application for an activity permit. Such regulatory terms as "(i)f the Detroit Police Department has recommended approval, City Council may further consider the petition for approval" and "(ii) if there are unresolved violations or delinquencies against the property, City Council will consider deferring action or may vote to disapprove the petition" are dubious in their clarity and specificity. HDV's transfer application had been pending for three years before the City Council voted to reject it. If the City's governmental interest is to prevent the negative secondary effects that are associated with adult entertainment and to limit the existence of nonconforming uses, an extremely delayed vote appears to have hindered such a purpose and will not further those stated interests.

Moreover, the 2003 Procedures and Criteria resolution also appears to vest broad discretion in the City Council without defining any reasonable criteria regarding its decisions of approval or disapproval of the Michigan Liquor Control Commission activity permits. Although the 2003 Procedures and Criteria resolution states a general desire to limit nonconforming uses, it does not provide any objective criteria that can be assessed by the City Council in determining whether to approve or deny an application. As such, the Court concludes that the 2003 Procedures and Criteria resolution is not narrowly tailored and, hence, it does not withstand intermediate judicial scrutiny, as defined by *O'Brien* and its progeny.

16

Accordingly, the Court determines that the 2003 Procedures and Criteria resolution is facially in violation of the First and Fourteenth Amendments to the United States Constitution. Thus, the Plaintiffs' motion is granted on this issue.

IV.

The Plaintiffs also urge the Court to conclude that their First Amendment rights were violated by the City when it denied the transfer of the Michigan Liquor Control Commission activity permits because the K&P was a nonconforming use within the Zoning ordinance. The City counters by pointing out that HDV's transfer application was not denied solely because of its nonconforming use status. Moreover, it maintains that even if this had been the sole reason for the denial of the transfer, the law allows it to take HDV's nonconforming use status into account when making its decision.

The Plaintiffs cite the general principal that "unconstitutional statutes are void *ab initio* and, therefore, decisions finding statutes unconstitutional are applied retroactively." *Lambard v. Saga Food Service, Inc.*, 338 N.W.2d 207, 213 (Mich. Ct. App. 1983). However, courts have also recognized that "the actual existence of a statute, prior to a determination that it is unconstitutional 'is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration.'" *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 2002 U.S. Dist. LEXIS 14839, 11-12 (W.D. Mich. July 9, 2002) (quoting *Chicot County Draining District v. Baxter State Bank*, 308 U.S. 371, 374 (1940)). Indeed, the Michigan Supreme Court has recognized that, under certain circumstances, "the necessities of governmental administration" may counsel against retroactive application of a decision holding a legislative act unconstitutional. *Stanton v. Lloyd Hammond Produce Farms*, 253

17

N.W.2d 114, 118-19 (Mich. 1977).

In this case, the Court has struck down the adult use portions of the zoning ordinance on August 6, 2007 as an unconstitutional prior restraint on free expression. It also granted prospective relief to the Plaintiffs through the issuance of an injunction. Even if the factual circumstances of this case warranted a retroactive application of the ruling, the City is correct when it noted that there is at least a genuine issue of a material fact regarding the reasons for the denial of the transfer application by the Detroit City Council. Although the applicant's nonconforming use status was considered, the resolution which denied the transfer petition also stated that the City Council was concerned that there had been a pattern of drug offenses and other criminal conduct at the East Congress location. It is noteworthy that the Plaintiffs have not addressed the impact, if any, that this alternative justification has on their contention that their First Amendment rights had been violated by the City's decision not to grant the HDV's transfer application.[9] As such, the Court concludes that the entry of a summary judgment is not warranted at this time.

V.

The Plaintiffs, in assuming that K&P's business was a nonconforming use, submit that the City's retroactive application of the 2003 Procedures and Criteria resolution violated their First Amendment rights. They cite *Lamar Advertising Co. v. Township of Elmira*, 328 F.Supp.2d 725, 732-33 (E.D. Mich. 2004) which they believe supports their argument. In *Lamar*, the plaintiff applied to the local government authority and the Michigan Department of Transportation for a permit to erect a billboard. Although the State had approved the plaintiff's application to put up its

---

[9] The parties also fail to discuss the impact of this claim once the Court has found the 2003 Procedures and Criteria unconstitutional.

18

sign, the Township refused to issue the sought-after building permit, erroneously believing that it had the discretion to withhold such approval. The court held that (1) the action by the Township to withhold approval was a prior restraint on protected speech and (2) its exercise of a discretion that it did not have constituted a violation of the plaintiff's First Amendment rights. *Id.* at 733-34.

The City disagrees with the Plaintiff's argument on this issue (i.e.,"a newly adopted regulation [under Michigan law] may properly be applied to an application for a permit which was filed before the regulatory change." The City has also presented this Court with case law and secondary authority which states that "[w]here the building permit has been applied for but has not been issued, 'vested rights' are not acquired even though substantial sums have been expended by the applicant." *Schubiner v. West Bloomfield Township*, 351 N.W.2d 214, 219 (Mich. Ct. App. 1984) (citing *Franchise Realty Interstate Corp. v. Detroit*, 118 N.W.2d 258 (Mich. 1962)); *see also Commonwealth Edison Co. v. United States Nuclear Regulatory Comm.*, 830 F.3d 610, 617 (7th Cir. 1987) ("as a general rule of administrative law the filing of an application does not itself create a vested right in the applicant to the particular terms under which the license will be issued."); Retroactive Effect of Zoning Regulation, in Absence of Saving Clause, on Pending Application for Building Permit, 50 A.L.R.3d 596, 607 ("a zoning regulation may be retroactively applied to deny an application for a building permit, even though the permit could have been lawfully issued at the time of application.")

In their opposition papers, the Plaintiffs seek to distinguish *Lamar* from those cases which have been cited by the City. They point out that the court in *Lamar* held that the Township's actions constituted a prior restraint on protected speech (i.e., withholding permit to build the sign based on authority that it did not have). However, as explained above, the 2003 Procedures and Criteria

resolution does not constitute a prior restraint on speech. Rather, it represents a content-neutral time, place, and manner regulation. Thus, the Court concurs with the City and, in so doing, holds that *Lamar* is inapposite to this case, in that the plaintiffs did not have a vested right to any regulation.

As of this date, the City had not adopted any regulations or guidelines which pertain to its approval or denial of activity permits. Furthermore, the Plaintiffs have failed to proffer any evidence which would show that their transfer application would have been approved by the City Council when it was submitted for consideration by this legislative body. There is no evidence that the Plaintiffs have made a claim of an entitlement to equitable estoppel or to assert that the City had exercised bad faith in connection with their application process - which are recognized as exceptions to the general principle that an applicant does not have a vested right in existing regulations at the time of application. *See Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1334 (11th Cir. 2004); *754 Orange Ave., Inc. v. City of West Haven, Conn.*, 761 F.2d 105, 113 (2d Cir. 1985) ("as a matter of general zoning law in Connecticut, a permit applicant does not have a vested right in the existing classification of his land . . . however, a court will not allow changed building zone regulations to act as a bar to a building project where it would be inequitable to do so.") Accordingly, the Court denies the Plaintiffs' request for the entry of a summary judgment on this claim.

VI.

The Plaintiffs next assert that "a Michigan municipality is not free to eliminate nonconforming uses in whatsoever manner it pleases." Furthermore, they argue that through the 2003 Procedures and Criteria resolution, the City is attempting to unconstitutionally eliminate nonconforming uses in a manner that is not authorized by the Michigan Constitution or the Michigan

Zoning Enabling Act, Mich. Comp. Laws § 125.3101, et seq. Thus, it is their collective belief that the City has deprived them of their vested nonconforming use rights in violation of the Fifth Amendment (i.e., substantive due process).

The City maintains that (1) HDV does not have standing to assert this claim and (2) it has neither prevented nor attempted to prevent the owner of the premises from using the property as an adult cabaret. In addressing the City's standing claim, the Sixth Circuit in this case opined:

> Article III of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, §2, cl. 1. To satisfy this "case-or-controversy" requirement, a plaintiff must establish three elements: (1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue, meaning that the injury must be fairly traceable to the defendant's action; and (3) a likelihood that the injury would be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

*H.D.V. – Greektown, LLC*, 568 F.3d at 616. As recognized by the Sixth Circuit and this Court, HDV has entered into a conditional purchase agreement to buy all of K&P's assets, including its liquor license and topless activity permit. The City's denial of the transfer of these assets constitutes an injury in fact which could be redressed with a favorable decision by this Court. *See id.* ("Both K&P and H.D.V. were . . . harmed when their desired transaction was precluded by the City Council's inaction on - and ultimate denial of - the transfer application."); *see also Dilaura v. Ann Arbor Ch. Twp.*, 30 Fed. Appx. 501, 506 (6th Cir. 2002) (plaintiffs with "definite but non-possessory interest in the land (i.e., who will receive the land as part of a contractual or other agreement) do have standing to challenge zoning decisions.")

Turning to the Plaintiffs' argument, the Michigan Court of Appeals has held that "[a] prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective

date." *Belvidere Township v. Heinze*, 615 N.W.2d 250, 253 (Mich. Ct. App. 2000) (citing *Heath Township v. Sall*, 502 N.W.2d 627 (Mich. 1993)). In addition, "when the proposed use does not expand or extend the nonconformity, the property owner or his successors can continue the nonconforming use." *Kopietz v. Village of Clarkston*, 535 N.W.2d 910, 914 (Mich. Ct. App. 1995). Thus, the Plaintiffs believe that HDV, as the successor in interest to K&P, "has the right to continue any nonconforming use operated by K&P."

Assuming, *in arguendo*, that the Plaintiffs' argument is correct, it does not necessarily follow that HDV also has a vested property interest (warranting constitutional protection) in the *transfer* of K&P's liquor license and topless activity permit. The Sixth Circuit, while recognizing that the holder of a liquor license facing renewal or revocation proceedings has a property interest, has held that first-time applicants for liquor licenses and related permits do not. *Wojcik v. City of Romulus*, 257 F.3d 600, 610 (6th Cir. 2001). Likewise, persons or entities requesting the transfer of liquor licenses and entertainment permits - who are in essentially the same position as new applicants - do "not have a property interest so as to entitle them to procedural or substantive due process rights in the same way that an existing permit holder might demand." *Id.*

Here, the Plaintiffs allege that the 2003 Procedures and Criteria resolution deprived them of their vested nonconforming use rights in violation of substantive due process. However, while the 2003 Procedures and Criteria resolution was used by the City to deny HDV's transfer application, there is no indication that this regulation was used to infringe upon the ability of K&P or HDV to continue their operation of an adult cabaret. As explained above, HDV would only need to obtain the liquor license and topless activity permit if it intended to serve liquor while presenting topless entertainment. Although the presentation of topless entertainment without serving liquor may be

less profitable, this is not a concern that is entitled to constitutional protection. *See Mitchell v. Commission on Adult Entertainment Establishments*, 10 F.3d 123, 132 n. 10 (3rd Cir. 1993) (citing *Young v. American Mini Theaters*, 427 U.S. 50, 78 (1976); *Movie & Video World, Inc. v. Board of Cty. Comm's*, 723 F. Supp. 695, 700 (S.D. Fla. 1989)). Thus, inasmuch as the Plaintiffs have not shown that HDV has any property interest in the transfer of the liquor license and topless activity permit, they are not entitled to the due process protection which they seek to obtain in this law suit.

## VII.

The Plaintiffs also proclaim that the City, in its reliance on Sections 2 and 4 of the 2003 Procedures and Criteria resolution, has violated their rights under the Equal Protection Clause of the Fourteenth Amendment. The City rejects this argument, contending that this challenged regulation should be subject to a rational basis review because adult businesses are not classified as a protected group. Furthermore, the City asserts that all applicants for Michigan Liquor Control Commission activity permits are treated alike and thus, there is no violation.

The Equal Protection Clause does not require that all persons be treated exactly the same, as long as the distinction in the treatment has relevance to the purpose for which the classification is made. *Chambers v. Stengel*, 256 F.3d 397, 401 (6th Cir. 2001). "Where a fundamental right is involved, [courts] apply a strict scrutiny standard of review to content-based regulations to determine whether the statute is narrowly tailored to achieve a compelling state interest." *Id.* However, if the regulations are content-neutral, courts apply an intermediate scrutiny standard of review where the restriction will survive if it is narrowly tailored to further a significant governmental interest. *Id.*

Here, as explained above, the 2003 Procedures and Criteria resolution is a content-neutral

regulation which should be analyzed under the *O'Brien* intermediate scrutiny standard of review. Section 2 makes a distinction between businesses with "unresolved violations" and those with "resolved" violations. Although those businesses with "unresolved violations" are subject to actions by the City Council - such as the possible deferral of decisions or the rejection of an application - the regulation is silent regarding the implementation of legislation involving businesses with resolved violations and, presumably those with established violations. This differentiation does not make complete sense and is not narrowly tailored. Similarly, sections 4 and 5 distinguish between conforming uses and nonconforming uses. However, for the reasons that have already been stated above, the 2003 Procedures and Criteria resolution cannot withstand intermediate scrutiny because it is not narrowly tailored. Accordingly, the Plaintiffs are entitled to a summary judgment on this claim.

## VIII.

Turning to the remedy which the Plaintiffs seek to obtain in this lawsuit, they urge the Court to enjoin the City (1) from utilizing the 2003 Procedures and Criteria resolution, and (2) to approve K&P's transfer application. The City, on the other hand, insists that the requested injunctive relief is now moot inasmuch as it adopted a new Procedures and Criteria resolution. Furthermore, the City maintains that even if the Court finds the 2003 Procedures and Criteria resolution to be unconstitutional, such a judicial ruling would not necessarily mean that the Plaintiffs are entitled to an approval of their transfer application. Rather, the City urges the Court to direct the Plaintiffs to reapply for a transfer under its newly adopted Procedures and Criteria resolution.

The Sixth Circuit reaffirmed a long held legal standard in this case which holds that "a state law may not be enforced if it conflicts with federal law." *H.D.V. Greektown*, 555 F.3d at 620 (citing

*Riley v. Kennedy*, 128 S. Ct. 1970 (2008) (citing U.S. Const. art. VI, cl. 2)).  Although the City has expressed its intention not to enforce the 2003 Procedures and Criteria resolution again, the Court believes that an order that will prohibit from enacting and/or enforcing the 2003 Procedures and Criteria resolution is justified under the circumstances of this case. Hence, the Court will grant the Plaintiffs' request for a injunctive relief.

Turning to the Plaintiffs' other request for injunctive relief, the Court notes that a plaintiff who seeks a permanent injunction must establish that "it has suffered irreparable injury, there is no adequate remedy at law, 'that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted,' and that it is in the public's interest to issue the injunction." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Whenever a district court is faced with such a request for equitable relief, it is required to conduct an evidentiary hearing to determine whether a permanent injunction should be issued unless there are no factual issues remaining for trial. *Gibson Guitar Corp. v. Paul Reed Smith Guitars LP*, 423 F.3d 539, 546 (6th Cir. 2005).

In this case, it is undisputed that the Plaintiffs submitted the materials required for HDV's transfer application in June 2003.  It is also undisputed that the City then passed the 2003 Procedures and Criteria resolution and did not make a decision regarding the transfer application until November 2006 - over three years later.  The Court has now found that the 2003 Procedures and Criteria resolution is unconstitutional which can no longer be applied by the City under circumstances that are similar to the facts in this case.

In its review of the issues herein, the Court concludes that (1) the Plaintiffs' First Amendment rights have been irreparably harmed and (2) the excessive delay that they have

experienced only to be denied a transfer application on the basis of an unconstitutional regulation warrants the issuance of an injunction. Furthermore, the Court, in its review of the record in this cause, determines that the Plaintiffs have no adequate remedy at law, other than the injunction which has been authorized herein. Without the intervention of this equitable remedy, HDV will be unable to operate its business as authorized by the laws of Michigan and the municipal ordinances which have been examined by this Court. Notably, the sale of K&P's assets to HDV are expressly conditioned on the transfer of these permits. Finally, the Court finds that the public interest is also furthered by protecting the constitutional rights of the transfer applicant. The City must therefore grant its approval to the Plaintiffs' transfer application.

IX.

Accordingly and for the reasons stated above, the Court grants in part, and denies in part, the Plaintiffs' third motion for the entry of a partial summary judgment.


IT IS SO ORDERED.


Dated: <u>September 8, 2010</u>                    <u>s/Julian Abele Cook, Jr.</u>
          Detroit, Michigan                    JULIAN ABELE COOK, JR.
                                               United States District Court Judge



<u>Certificate of Service</u>
          I hereby certify that on September 8, 2010, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                               <u>s/ Kay Doaks</u>
                                               Courtroom Deputy Clerk