UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H.D.V.-GREEKTOWN, ET AL.,

            Plaintiffs,

v.

CITY OF DETROIT,

            Defendant.

_____ /

No. 06-11282

District Judge Julian Abele Cook, Jr.

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

This is a First Amendment[1] case brought against the City of Detroit ("the City") by Plaintiffs H.D.V.-Greektown, LLC, 415 East Congress, LLC, and K&P, Inc. ("Plaintiffs"). The initial complaint was filed on March 28, 2006. Plaintiffs filed three motions for summary judgment, each of which was granted in part, and an appeal to the Sixth Circuit, which reversed in part one of the partial denials of summary judgment. Ultimately, the case settled, culminating in a consent decree entered on August 23, 2011 [Doc. #145]. Under the consent decree, and in satisfaction of Plaintiffs' damage claims, the City agreed to pay Plaintiffs $2,950,00.00. The parties stipulated that the Court would decide the issue of attorney fees under 42 U.S.C. § 1988, and that for purposes of an attorney fee motion, the Plaintiffs would be considered "prevailing parties." However, the City did not waive its right to challenge Plaintiffs' request for attorney fees and costs on any other ground. *Id*.

Before the Court at this time is Plaintiffs' Motion for Attorney Fees and Costs

---

[1] The second amended complaint [Doc. #84] also alleged Fourth, Fifth and Ninth Amendment and violations, all brought under 42 U.S.C. § 1983. At its heart, however, this is a First Amendment case.

[Doc. #148], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED IN PART AND DENIED IN PART, and that Plaintiffs be awarded attorney fees in the amount of $372,118.19 and costs in the amount of $13,282.93, for a total award of **$385,401.12**.

## I.   LEGAL PRINCIPLES

42 U.S.C. § 1988 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of section[] 1983...of this title,...the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." Attorney fees awarded under this section must be reasonable. As the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), "[t]he most useful starting point for determining the amount of a *reasonable* fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." (Emphasis added). In *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6ᵗʰ Cir. 1987), the Sixth Circuit, citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6ᵗʰ Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."

In *Perdue v. Kenny A.*, 559 U.S. 542 (2010), the Supreme Court held that the lodestar amount is presumptively reasonable, and that an upward enhancement from that amount for "superior performance" is impermissible, absent "rare and exceptional" circumstances. *Id.* at 1674. In so holding, *Perdue* referenced the oft-stated principle that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id.* at 1673, quoting *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 566 (1986) (internal quotation marks

omitted). Thus, once the lodestar is established, a court will generally not depart upward or downward based on factors such as the complexity of the case, the experience, reputation or ability of counsel, the amount involved or the results obtained. However, those factors are most certainly relevant in arriving at the lodestar figure in the first instance, particularly in determining whether the hours claimed were *reasonably* expended within the overall context of the litigation. *See Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial [lodestar] fee calculation hours that were not 'reasonably expended'")[2]; *Aventis Cropscience, N.V. v. Pioneer Hi-Bred International, Inc.*, 2010 WL 2306677, *5, fn. 7 (M.D.N.C. 2010) (pursuant to *Perdue*, court "consider[s] the relevant *Johnson* factors only within the context of determining a reasonable number of hours and reasonable rate for the purposes of the lodestar calculation").

In the final analysis, "[t]he primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999). *See also Coulter v. State of Tennessee, supra*, 805 F.2d at 149 ("Legislative history speaks of 'fees which are adequate to attract competent counsel, but which do not produce windfalls,'..and cautions against allowing the statute to be used as a

---

[2] As to specific inquiries that would be included in the initial lodestar calculation, *Hensely* referenced *Johnson v. Georgia Highway Exp., Inc*., 488 F.2d 714, 717 -720 (5th Cir. 1974), which listed the following 12 factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

'relief fund for lawyers'")(internal citations to Congressional Record omitted). Or, as the Fifth Circuit put it in *Johnson*, 488 F.2d at 720, "[C]ourts must remember that they do not have a mandate...to make the prevailing counsel rich." The party seeking an award of fees bears the burden of showing that the request is reasonable. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990).

Finally, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 438.

## II.   DISCUSSION

The City does not contest that for purposes of § 1988, the Plaintiffs are "prevailing parties," and therefore entitled to attorney fees. The question before this Court is whether the fees and costs requested–$1,532,640.61–are "reasonable."[3] We begin with the lodestar: a reasonable hourly rate times a reasonable number of hours.

### A.   Hourly Rate

In determining a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 762 (6th cir. 2004).  The court retains broad discretion to determine what constitutes a reasonable hourly rate.  *Id.; Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir. 1995).

Lead counsel Bradley J. Shafer has billed at $350.00 per hour. Co-counsel Andrea

---

[3] Plaintiffs' initial fee petition [Doc. #148] requested $1,507,928.47 in fees and costs [Doc. #148, at 30]. Plaintiffs requested additional costs of $1,192.80 in their Reply Brief [Doc. #155], and filed a supplemental request [Doc. #157, at 2] for $21,980.00 in additional attorney fees and $1,539.34 in additional costs, bringing the total requested to $1,532,640.61.

E. Pritzlaff bills at $250.00 per hour, and Matthew J. Hoffer at $200.00 per hour. Mr. Shafer is an experienced constitutional litigator specializing in First Amendment cases. According to the State Bar of Michigan's most recent (2010) Economics of Law Practice Survey, civil rights lawyers in the 75th percentile of earnings bill at a rate of $325 per hour, and those at the 95th percentile at $450 per hour. Mr. Shafer would clearly fall between the 75th and 95th percentiles, and his requested rate of $350.00 per hour is reasonable for a civil rights attorney with his skill and experience. Likewise, the rates of $250.00 and $200.00 per hour are reasonable for his associates. Therefore, I recommend that the Court approve the requested hourly rates.

### B.   Hours Expended

Certain of the *Hensley/Johnson* factors, *see* fn. 2, *supra*, auger in favor of a substantial award of attorney fees. As discussed above, the hourly rate claimed by Plaintiffs' lawyers is in line with customary rates for attorneys of comparable skill and experience. While I am not convinced that First Amendment cases are intrinsically more difficult than any other complex litigation–be it criminal, antitrust, intellectual property, or tax law–this case clearly called for a certain level of skill, and the proceedings were lengthy.[4]  Importantly, the Plaintiffs' attorneys achieved substantial results for their clients, in terms of both injunctive and monetary relief. While the City points out that Plaintiffs did not prevail on all of their claims, the more important consideration is the

---

[4] However, I reject Plaintiffs' contention that this case would be considered "undesirable," and thus rejected by many lawyers, simply because it involves the adult entertainment industry. The Eastern District of Michigan encompasses a cosmopolitan urban area, and there is no significant social opprobrium that attaches to a lawyer who handles these types of cases. In fact, criminal lawyers in this district routinely handle cases involving murder, rape, drugs, multi-million dollar fraud schemes, and all manner of deviant behavior, and the competition for those cases is intense. Moreover, there are few, if any, lawyers in this district who would deem a case worth $3,000,000 "undesirable."

scope of the results that were obtained. In this regard, *Hensley v. Eckerhart,* 461 U.S. at 435, stated:

> "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters."  (citation and footnote omitted).

Similarly, in *Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160, 1169 (6th Cir.1996), the Sixth Circuit held:

> "However, a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." (Internal citations omitted).

*See also Deja Vu v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 421 F.3d 417, 423 (6th Cir. 2005) ("[W]e have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.").

Yet, the fact that Plaintiffs have great lawyers who achieved great results does not give them *carte blanche* to ask for the moon and the stars, nor does it relieve the Court of its ultimate responsibility to independently assure that the fee is reasonable.

In this case, the total hours claimed to have been expended is not reasonable, and must be reduced in computing the lodestar. To begin with, there are certain claimed hours for which no compensation should be given, and that can therefore be completely removed from the lodestar calculation.  The remaining time spent on the case was excessive, and will be reduced accordingly.

### 1.    Claims for Which no Fees Should be Granted

Fees Related to the 2003 Lawsuit

Plaintiffs filed a previous lawsuit against the City in 2003. *See H.D.V.-Greektown, L.L.C., et al. v. City of Detroit,* E.D. Mich. No. 03-74887. That case was resolved when the parties stipulated to and were granted an order granting a declaratory judgment invalidating the so-called "Condition 18" of Plaintiff K&P, Inc.'s land use grant (a condition precedent to an Adult Cabaret Use entertainment license). Condition 18 restricted entertainment to "that which would be considered similar to or comparable to a 'male dance review on ladies night' and not include the type of entertainment that would be considered similar to or comparable to a 'topless' or 'go-go bar.'" *See* Order Granting Declaratory Judgment as to Condition 18, and Dismissing all Other Remaining Claims Without Prejudice," Plaintiff's Exhibit G, Doc. #148. The Order was entered by Judge Hood on December 31, 2003. The last line of the Order reads, "By stipulation of the parties, all claims in this action are dismissed without prejudice and without costs or an award of attorneys fees to any party."

In requesting fees for the 2003 case, Plaintiffs assert that the earlier case was a "related proceeding," and in fact, that the present case is the *same* case, given that the 2003 claims were dismissed without prejudice. Plaintiffs argue in effect that since they made a claim for attorney fees and costs in the 2003 case, and since "all claims" in that action were dismissed without prejudice, they are entitled to ask for 2003 fees in this 2006 case.  However, Plaintiffs misunderstand both the plain language and the intent of the 2003 Order and Stipulation. It is clear that the section of the Order stating that "all claims in this action are dismissed without prejudice" refers to the substantive claims, not to the claim for attorney fees. Otherwise, the language immediate following that

phrase–"and without costs or an award of attorneys fees to any party"–would be unnecessary surplusage. Whatever liability the City might have for subsequent proceedings, the 2003 stipulated order forecloses the Plaintiffs' request for attorney fees in that earlier litigation.

<u>Criminal Proceedings Involving Monica Conyers and Sam Riddle</u>

Former City Council member Monica Conyers and her assistant, Sam Riddle, were indicted by a grand jury in this district with regard to a wide-ranging bribery scheme.[5] In the course of the government's investigation, Plaintiffs' client, Joe Hall,  received a grand jury subpoena.  Plaintiffs seek $16,200.00 in attorney fees related to the criminal proceedings. Counsel's billing records indicate that he reviewed and discussed with his client the grand jury subpoena; spoke telephonically with the Assistant United States Attorney; attended the grand jury proceedings[6]; met with reporters and reviewed news articles and television reports (!); and met with the Assistant United States Attorney.

The criminal case was a separate proceeding that involved separate parties. The government was represented by the United States Attorney's Office. While Monica Conyers and Sam Riddle may have been rogue City functionaries, the City itself was not a party to the criminal case. The relief sought and obtained in the present case did not depend on the guilt or innocence of Conyers and Riddle in the criminal case.  There were no First Amendment issues in the criminal case. While Joe Hall may have been subpoenaed as a federal grand jury witness, there is no basis for the City to pay his attorney fees for that proceeding.  Nor am I inclined to recommend that the City pay

---

[5] The indictment is appended to the City's Response as Exhibit I.

[6] Of course, counsel would not have been present in the grand jury room when Mr. Hall gave his testimony, but would have been available for consultation outside in the hallway.

Plaintiffs' counsel for watching news reports or talking to reporters.

## 2.   Reasonableness of Remaining Attorney Time

Three general observations are in order before delving into the specifics of Plaintiffs' fee request.  First, the parties seem to have forgotten the well-established principle that "[a]  request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 438. Plaintiffs' fee petition consumes 45 pages (37 pages excluding table of authorities, etc.), with 225 pages of exhibits. Mr. Shafer's affidavit alone (Plaintiffs' Exhibit B) weighs in at 37 paragraphs in 22 pages. The City's response consumes 55 pages (48 pages excluding table of authorities, etc.), with 170 pages of exhibits. Plaintiffs' Reply Brief [Doc. #155] is 43 pages long, with 48 footnotes and 94 pages of exhibits, including Mr. Shafer's 9-page, 22-paragraph "supplemental affidavit." Plaintiffs followed this with a "supplement" to their motion for fees and costs, including Mr. Shafer's "second supplemental affidavit" [Doc. #157]. Not to be outdone, counsel for the City filed an 8-page, 19-paragraph responsive affidavit [Doc. #158]. It is difficult to characterize these proceedings as anything other than "second major litigation."

Secondly, I have in other cases cited *King World Productions, Inc. v. Financial News Network, Inc.,* 674 F.Supp. 438, 440 (S.D.N.Y.1987), for the proposition that "[w]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist these extravagances upon their unsuccessful adversaries." *See Shields v. Merchants and Medical Credit Corp., Inc*., 2011 WL 3566485, *6 (E.D.Mich. 2011). Plaintiffs, on the other hand, cite *Missouri v. Jenkins*, 491 U.S. 274 (1989) and Justice Rehnquist's dissenting opinion in *City of Riverside v. Rivera,* 477 U.S. 561(1986), for the proposition that *King World Productions*, and by implication my opinion in *Shields*, are no longer good law. They quote Justice

Rehnquist's statement in his *Rivera* dissent that the reasonableness of a fee is determined "in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under § 1988 means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys."

Plaintiffs misread both *Jenkins* and Justice Rehnquist's statement in *Rivera*. The question in *Jenkins* was whether a fee award under § 1988 "should...compensate the work of paralegals and law clerks by applying the market rate for their work[.]". The decision focused on the hourly *rate*, not on the reasonableness of the number of hours expended. Moreover, in *Rivera*, Justice Rehnquist was critical of what he termed "the extraordinary number of hours put in by respondents' attorneys." *Rivera*, 477 U.S. at 591. He stressed the principle set forth in *Hensley* that excessive hours that would not properly be billed to a client are not properly charged to the losing party, and would have rejected the plaintiffs' fee request, stating:

> "I think that this analysis, which appears nowhere in the plurality's opinion, leads inexorably to the conclusion that the District Court's fee award of $245,456.25, based on a prevailing hourly rate of $125 multiplied by the number of hours which respondents' attorneys claim to have spent on the case, is not a "reasonable" attorney's fee under § 1988." *Id.* at 592.

While an attorney is entitled to be compensated at a prevailing market hourly rate–the rate that an affluent client might be charged–nothing in *Jenkins* or in Justice Rehnquist's dissenting opinion supports the proposition that a losing party must be on the hook for each and every extravagance that a millionaire client might be willing to finance, no matter how excessive or tangentially related to the litigation or to the results obtained. It is unlikely that Justice Rehnquist would have awarded § 1988 fees for counsel to watch the evening news. Most attorneys will claim that they used "billing judgment," but under

-10-

*Hensley* and its progeny, it is the duty of the Court, not counsel, to determine whether or not the number of hours expended was reasonable. In exercising its discretion, a court should be mindful of the Congressional mandate that fee awards under § 1988 be "adequate to attract competent counsel, but ... not produce windfalls to attorneys." *Rivera*, 477 U.S. at 580, quoting Senate Report, at 6, U.S. Code Cong. & Admin. News 1976, p. 5913. *King World Productions* and *Shields* are correct statements of the law.

My third observation is that in trimming an excessive number of hours from a lengthy fee petition, a court is not required to undertake a line-by-line analysis, or as I put it in *Saieg v. City of Dearborn*, 2012 WL 787261, *5 (E.D. Mich. 2012), "to dissect [a] fee petition with the gimlet eye of a tax accountant." Where, as here, there is a voluminous fee application or time sheet[7], the court "is not required to set forth an hour-by-hour analysis of the fee request" in reducing the fees. *Jacobs v. Mancuso,* 825 F.2d 559, 562 (1st Cir.1987). *See also In re 'Agent Orange' Product Liability Litigation,* 818 F.2d 226, 237-38 (2d Cir.1987) ("no item-by-item accounting of the hours disallowed is necessary or desirable"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.,* 776 F.2d 646, 657-58 (7th Cir.1985). Rather, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.1992)(internal quotation marks omitted). *See also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (holding that "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'") (internal citations omitted); *Mares v.*

---

[7] Plaintiffs' time-sheets for fees come in at a whopping 113 pages. *Plaintiffs' Exhibit B-1.*

*Credit Bureau of Raton*, 801 F.2d 1197, 1202 -1204 (10th Cir. 1986) (affirming a reduction in claimed fees by 77%, the court stated, "There is no requirement, either in this court or elsewhere, that district courts identify and justify each disallowed hour.").

A number of Plaintiffs' claims are indicative of the excessiveness of their fee petition. For example, as discussed above, they seek compensation for the 2003 proceedings, which were resolved without costs to either party, and for the grand jury proceedings. They also seek fees related to communications with the media. The inclusion of billings that are clearly excessive tends to cast doubt on the entire petition.

Plaintiffs also seek reimbursement for all of the time spent in 2004 (over two years before this suit was filed) in administrative hearings before the Detroit Board of Zoning Appeals ("BZA"). The City had issued tickets to the Plaintiff K&P, Inc.  for allegedly intensifying their nonconforming use by increasing the number of dancers and the number of days on which the entertainment was provided. While Plaintiff might be entitled to fees related to enforcement of a consent judgment, the question of  Condition 18, which had been resolved in the 2003 consent judgment, was a relatively minor part of the BZA proceedings, and the bulk of the 2004 administrative proceedings were not "reasonably expended" on the present lawsuit, which was filed in 2006. To ask for all fees related to the BZA proceedings is clearly excessive.

Plaintiffs seek fees for time related to the "Jane Roe" Plaintiffs. However, The "Roe" Plaintiffs, all dancers, were voluntarily dismissed by stipulation on August 9, 2011. Thus, these Plaintiffs received no relief, including no monetary relief. While Plaintiffs are correct that the remaining Plaintiffs had standing to assert declaratory relief claims on behalf of the dancers, there was, or should have been little additional work attributable to the Roe Plaintiffs, particularly with regard to researching and formulating the legal issues

-12-

that would have been applicable to the remaining Plaintiffs.

In his affidavit, counsel for Plaintiff holds himself out as one of the most experienced and capable First Amendment attorneys in the nation. I do not question counsel's skill. However, this level of experience seems inconsistent with the astonishingly large number of hours claimed for researching the law and preparing pleadings. A lawyer arguably charges a higher hourly rate based on his or her greater level of experience. Of course, an attorney could conceivably spend an unlimited amount of time on research and writing, but for purposes of § 1988, this Court must make a determination of what is a *reasonable* amount of time, given the attorney's professed level of skill. While I do not suggest that counsel did not in fact expend the time that he claims, the number of hours claimed is excessive.

"Determining reasonable attorney fees is not an exact science." *O'Connor v. Trans Union*, LLC, 2008 WL 4910670, *6 (E.D.Mich. 2008). In adjusting fee petitions in various cases, courts have reduced the total fees or hours by amounts ranging from 40%, *Id.*, to 77%. *Mares v. Credit Bureau of Raton*, *supra*. Although I find that the fees requested are excessive, I also recognize that the level of counsel's representation in this hard-fought case was excellent, and that he clearly expended much effort in obtaining excellent results for his clients. He and his associates will be fairly compensated for their efforts, but the Court does not have an obligation to make them millionaires. Deducting the amount claimed for the 2003 lawsuit, and reserving discussion of costs, expert fees and the fee enhancement request for the next section, Plaintiffs' request for attorney fees comes in at $1,049,994.50 ($1,044,994.50 for Shafer & Associates and $5,000.00 for Corbett Edge O'Meara). This includes approximately $56,795.00 for preparation of the

-13-

fee petition.[8] The fee petition claims will be discussed separately below, so the total amount claimed exclusive of the fee petition is $903,199.50.  It is appropriate for the Court to exercise its discretion in reducing this amount by 60%, awarding Plaintiffs attorney fees (exclusive of time spent on the fee petition) in the amount of $361,279.80.

Fee Enhancement

Plaintiffs seeks a ten percent fee enhancement, over and above the lodestar amount. Under *Perdue*, such enhancement is impermissible absent "rare and exceptional circumstances."  Plaintiffs bear the burden of supporting a request for enhancement with specific evidence. *Perdue*, 130 S.Ct. at 1673.

Here, Plaintiffs' counsel argues that the City's obstructionist conduct necessitates a fee enhancement. However, the time that counsel claims was required to litigate this case–which was excessive to begin with–is already accounted for in arriving at the lodestar figure.

Counsel also argues that because Sam Riddle allegedly solicited his clients' representative for a bribe, he was required to attend debriefings with the FBI and to attend criminal trial proceedings. Thus, argues counsel, he was "then not only representing an unpopular plaintiff with an unpopular cause, but was involved in a seedy subject of local, state, and national media attention." *Plaintiff's Brief*, at 29.

Welcome to the practice of law. Not to mention that most lawyers–and especially those who, like present counsel, have a national practice–consider media attention beneficial, not detrimental. In the words of Brendan Behan, "There's no such thing as bad publicity, except your own obituary."  In any event, for the reasons discussed above, the

_____

[8] A conservative approximation is necessary because certain "block billed" entries include both work on the fee petition and work on finalizing the settlement.

criminal proceedings were a separate matter and are not compensable under § 1988.

Finally, counsel argues that an enhancement is justified because his "requested rates are low as compared to other experienced First Amendment attorneys." *Plaintiffs' Brief*, at 29. However, as discussed above, counsel's requested rate of $350 per hour falls squarely between the 75th and 95th percentile of fees charged by civil rights lawyers with comparable experience, according to the State Bar's 2010 Economics of Law Practice Survey.

Plaintiffs have not met their burden of justifying a fee enhancement.

### Fee Petition Fees

Plaintiffs originally sought approximately $56,795 in attorney fees related to preparing the fee petition. In a supplemental brief [Doc. #157], they sought an additional $21,980 "for attorney fees incurred in preparing Plaintiffs' reply memorandum." The total amount of attorney fees requested for the fee petition proceedings is $78,775.00.

Plaintiffs are entitled to compensation for attorney time related to preparing and litigating the question of attorney fees. In *Coulter v. State of Tennessee, supra,* 805 F.2d at 151, the Sixth Circuit held that the hours expended in preparing a fee petition should not exceed 3% of the total award for attorney hours in the underlying case where a settlement is attained.[9] Based on Plaintiffs' original request, this would give them fees related to the fee petition in the amount of $33,379.82, less than half of what they now seek. Based on my recommended award of $361,279.80, the 3% figure is $10,838.39.

I therefore recommend that total attorney fees, including preparation of the fee

---

[9]In *Disabled Patriots of America v. Romulus Nights, Inc.*, 2005 WL 3132206 (E.D. Mich. 2005)*,* the Court added costs to attorneys' fees in calculating the 3% amount. This equation is broader than that sanctioned in *Coulter*, where the Sixth Circuit addressed only the calculation of attorney time. Under *Coulter*, the 3% figure should be based only on the total amount of attorneys' fees awarded in the underlying case, excluding costs.

petition, be awarded in the amount of **$372,118.19**.

### 3.   Costs

Plaintiffs seek costs and other fees in three categories: (1) $1,616.58 in costs related to the 2003 lawsuit; (2) $33,207.34 for costs in the present action[10]; and (3) $164,921.49 in expert fees.

For the reasons discussed above, Plaintiffs are entitled to neither attorney fees nor costs for the 2003 lawsuit.

As for costs associated with the present case, Defendant has challenged billings for WestLaw research, travel, copying and UPS overnight delivery charges. The total requested for these costs is $19,407.57.[11]  Citing *Gratz v. Bollinger*, 353 F.Supp.2d 929, 943-44 (E.D. Mich. 2005), Defendant also argues that Plaintiffs' request for travel costs in the amount of $22,373.70 be reduced by 50%.

An attorney's reasonable out-of-pocket expenses are recoverable under § 1988. *Northcross v. Bd. of Educ. of Memphis City Sch.,* 611 F.2d 624, 639 (6th Cir.1979) (district court has the authority to award "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client ... reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable."). As with attorney fees, the key concept is reasonableness, and the award of costs is likewise addressed to the Court's discretion.

Plaintiff has computed copies at 20 cents per page. Apart from whether the precise

---

[10] Plaintiffs requested $30,475.85 in their initial petition, and added an additional $1,192.80 in their Reply [Doc. #155] and $1,539.34 in their supplemental brief [Doc. #157], for a total of $33,207.34.

[11] This figure includes $2,145.29 in WestLaw charges, $1,719.97 in UPS charges, and $15,542 in copying costs.

number of pages copied is reasonable, it is not reasonable to make the Defendant pay the highest possible rate. *See, e.g.*, *Havard v. Wayne County*, 2012 WL 3583324, *4 (E.D.Mich.,2012)(stating that party did not give the Court a basis to determine the reasonableness of pages or costs, reduces copying rate from 35 cents per page to 10 cents per page); *Mary–Jo Hyldahl v. AT & T,* 2009 WL 2567197, * 4 (E.D.Mich. 2009) (reduction from 25 cents to 10 cents).

In *Gratz,* 353 F.Supp.2d at 943, the Court observed that "[s]ome courts completely disallow compensation for an attorney's travel time," and reduced the claimed travel hours by 50%, noting that the plaintiffs were represented by two out-of-state law firms.

In *Farley v. Country Coach, Inc*. 2008 WL 905215, *5 -6 (E.D.Mich. 2008), the Court reduced the plaintiff's claim for computer-assisted research, noting that much was either unnecessary or duplicative.

As with attorney fees, the Court is not required to do a line-by-line analysis in order to trim the fat from Plaintiffs' request for costs, especially because it is so voluminous. However, as reflected in *Havard, Gratz* and *Farley*, the Court clearly has discretion to reduce the amount. I have recommended a reduction in the request for attorney fees by 60%, and a commensurate reduction in the request for costs is appropriate. I therefore recommend that Plaintiff be awarded costs in the amount of $13,282.93.

Finally, the Plaintiffs request $164,921.49 in expert witness fees. However, expert witness fees as provided in § 1988 are not recoverable in a case brought under 42 U.S.C. § 1983. In *West Virginia Univ. Hosp., Inc. v. Casey,* 499 U.S. 83 (1991), the Supreme Court held that § 1988 does not authorize the shifting of expert witness fees to the losing party. After *Casey,* Congress amended § 1988 to allow the court, "in its discretion," to

-17-

award expert witness fees "in any action or proceeding to enforce a provision of section 1981 or 1981a of this title." 42 USC § 1988(c). While § 1988(b) provides for attorney fees and costs in a § 1983 action, § 1988(c), dealing with expert fees, omits any reference to § 1983.

Expert witness fees are not recoverable absent specific statutory authority. *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007), citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 584 U.S. 291 (2006). Thus, courts have consistently held that because the plain language of § 1988(c) limits expert fees to actions brought under §§ 1981 or 1981a, such fees are not recoverable in a civil rights case brought under § 1983. *See Davis v. City of New York*, 2011 WL 4946243, *7 (S.D.N.Y. 2011)("Pursuant to section 1988, courts only have the discretion to tax expert fees as costs in actions brought under 42 U.S.C. §§ 1981 and 1981a, not section 1983"); *Tatum v. City of New York,* 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) ("Finally, the law is clear that counsel may not recover under Section 1988 for expert fees paid in connection with a Section 1983 action.") (citing *Wilder v. Bernstein,* 975 F.Supp. 276, 287 (S.D.N.Y.1997)); *Hirsch v. Lecuona,* 2008 WL 4457690, at *2 (D.Neb. 2008) (declining to award expert witness fees as part of attorneys' fee award in § 1983 case because 42 U.S.C. § 1988 limits recovery of expert witness fees to actions to enforce 42 U.S.C. §§ 1981 or 1981a "and does not include action under § 1983 for vindication of Constitutional rights"); *Quesnoy v. Oregon*, 2012 WL 1155832, *10 (D.Or. 2012)(§1988(c) "does not include claims brought under § 1983")(citing *Ruff v. County of Kings,* 700 F Supp2d 1225, 1243 (ED Cal 2010); *Agster v. Maricopa County,* 486 F Supp2d 1005, 1019 (D Ariz 2007)).

Plaintiffs are therefore not entitled to expert witness fees.

-18-

## 4.    Reduction Based on City's Financial Condition

The City seeks a reduction of 15% in the fee award based on its precarious financial condition. As we all know, the City of Detroit, now under the direction of an Emergency Manager, is in the throes of an unprecedented financial crisis.[12]  City employees, unions, pensioners and creditors will no doubt be required to make painful concessions. The citizens and taxpayers of Detroit, as well as its businesses (and this includes Plaintiffs) will suffer a diminution of already scarce City services. No doubt the greater good would be served by granting the City's request for a reduction in attorney fees. Nevertheless, absent a clearer directive from the Sixth Circuit or the Supreme Court, there is no legal basis to do so.

The City cites *Wolfe v. Perry*, 412 F.3d 707 (6th Cir. 2005) in support of its request. However, *Wolfe* involved a fee awarded against a non-prevailing *plaintiff*.  The purpose of fee awards in such cases is to deter frivolous lawsuits, and "prevailing defendants are entitled to attorneys fees much less frequently" than prevailing plaintiffs . *Id*. at 720. In *Price v. Pelka* 690 F.2d 98, 100 (6th Cir. 1982), the Sixth Circuit held that "[s]ection 1988...allows a prevailing plaintiff to recover without consideration of [the defendant's] financial condition." This approach is also consistent with *Perdue, supra*, where the Supreme Court held that the lodestar calculation normally includes all of the factors relevant to a fee award, and *Hensley, supra*, which held that a prevailing plaintiff is entitled to a "fully compensatory fee." *Id*., 461 U.S. at 435; *Deja Vu, supra*, 421 F.3d at 423. Unfortunately, the City is not entitled to a reduction in the fee award based on its precarious financial condition.

---

[12] As reported in the New York Times of May 12, 2013, Emergency Manager Kevyn Orr issued a report describing Detroit's long term obligations of at least $15 billion, unsustainable cash flow shortages, and miserably low credit ratings.

## III.   CONCLUSION

For these reasons, I recommend that Plaintiffs' Motion for Attorney Fees and Costs [Doc. #148] be GRANTED IN PART AND DENIED IN PART, and that Plaintiffs be awarded attorney fees in the amount of $372,118.19 and costs in the amount of $13,282.93, for a total award of **$385,401.12**.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 23, 2013                        s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 23, 2013 electronically and/or by U.S. mail.

s/Michael Williams\
Relief Case Manager for the Honorable\
R. Steven Whalen