EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H.D.V.-GREEKTOWN, ET AL.,

          Plaintiffs,

v.

CITY OF DETROIT,

          Defendant.

                                  /

No. 06-11282

District Judge Arthur J. Tarnow

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Second Supplemental Motion for Attorney's Fees and Costs (after remand) [Doc. #174], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend that the motion be GRANTED IN PART AND DENIED IN PART, and that Plaintiffs be awarded a total of **$890,162.65** in attorney fees and costs, subject to the orders of the bankruptcy court in the City of Detroit municipal bankruptcy case.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a First Amendment case brought against the City of Detroit ("the City") by Plaintiffs H.D.V.-Greektown, LLC, 415 East Congress, LLC, and K&P, Inc. ("Plaintiffs"). The initial complaint was filed on March 28, 2006. Plaintiffs filed three motions for summary judgment, each of which was granted in part, and an appeal to the Sixth Circuit, which reversed in part one of the partial denials of summary judgment.

Ultimately, the case settled, culminating in a consent decree entered on August 23, 2011 [Doc. #145]. Under the consent decree, and in satisfaction of Plaintiffs' damage claims, the City agreed to pay Plaintiffs $2,950,00.00. The parties stipulated that the Court would decide the issue of attorney fees under 42 U.S.C. § 1988, and that for purposes of an attorney fee motion, the Plaintiffs would be considered "prevailing parties." However, the City did not waive its right to challenge Plaintiffs' request for attorney fees and costs on any other ground. *Id*.

On May 23, 2013, I filed a Report and Recommendation ("R&R"), recommending that Plaintiff's original motion for attorney fees and costs be granted in part and denied in part [Doc. #162]. I found as follows:

-That counsel's claimed hourly rates were reasonable.

-That no fees or costs should be granted regarding a preceding 2003 lawsuit, or for criminal proceedings involving Monica Conyers and Sam Riddle.

-That the remaining request for attorney fees, exclusive of the time expended in fee litigation, should be reduced by 60%, resulting in attorney fees of $361.279.80, exclusive of time expended in fee litigation.

-That Plaintiff was not entitled to a fee enhancement under *Perdue v. Kenny A.*, 559 U.S. 542 (2010).

-That fees related to litigating the attorney fee question be limited to 3% of the total award of attorney fees, resulting in an award of $33,379.82.

-2-

-That Plaintiff's claimed costs be reduced by 60%, resulting in an award of $13,282.93 for costs.

-That Plaintiff's request for $164,921.49 for expert witness fees are not recoverable in a case brought under 42 U.S.C. § 1983.

-That Defendant City of Detroit was not entitled to a 15% reduction in fees based on its critical financial situation.

On March 31, 2015, Judge Tarnow, overruling objections to my Report and Recommendation ("R&R"), adopted the R&R, granting in part and denying in part Plaintiff's motion for attorney fees and costs.  The Court awarded $372,118.19 in attorney fees and $13,282.93 in costs [Doc. #169].

On appeal, the Sixth Circuit affirmed in part Judge Tarnow's order, and remanded for further consideration.  Specifically, the Sixth Circuit found that:

-Plaintiff was not entitled to fees for the prior 2003 action or for the Conyers/Riddle criminal proceedings.

-The District Court did not abuse its discretion in declining to award full fees for the BZA/Condition 18 proceedings. The Sixth Circuit noted, "Although there is some evidence that the City had attempted to enforce Condition 18 during the proceedings, Appellants do not show that it was an issue substantial enough to justify an award of full fees–a burden that falls entirely on their shoulders."

-The Plaintiffs were not entitled to full fees for representing the "Jane Roe" plaintiffs. The Sixth Circuit stated, "[A]dding the employees to the litigation as Jane Roe Plaintiffs should not have been so onerous to warrant the award of the entirety of Appellants' requested fees attributable to that circumstance."

-The District Court did not abuse its discretion in denying Plaintiffs' request for a fee enhancement.

-The District Court abused its discretion in reducing the award of attorneys' fees and costs by 60% without an adequate explanation of how it arrived at that percentage:

> "Accordingly, we conclude that the district court abused its discretion in reducing the award for attorneys' fees and const by 60%, and we remand so that the district court can revisit, in light of this opinion, whether a mere blanket percentage reduction in fees truly is appropriate, and if so, by what measure, and ultimately to employ a methodology that permits meaningul appellate review."

-Given the intervening decision in *The N.E. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016), which abrogated the 3% cap rule on the award of fees for litigating fee requests set forth in *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), the Sixth Circuit "vacate[d] the district court's fee for fee determination, and...remand[ed] for recalculation of that portion of the award."

In its current Second Supplemental Motion, Plaintiffs seek, in addition to their initial requests, fees for attorney time and costs associated with their partially successful appeal of this Court's order granting in part and denying in part the initial motion and for the present motion on remand. The Defendant does not contest Plaintiffs' right to seek

those fees and costs, and does not contest the hourly rates claimed by Plaintiffs' attorneys.

Defendant also does not contest "the majority of the attorney time entries for which

Plaintiffs seek recovery, but does object to time that was billed in minimum increments of

a quarter hour.  Defendant notes that until December 5, 2011, Plaintiffs' counsel was

billing in minimum increments of a tenth of an hour."

Plaintiffs also seek a substantial fee enhancement owing to the United States

Bankruptcy Court's confirmation of the plan for the City of Detroit's bankruptcy, which,

Plaintiffs contend, will likely result in their being "paid approximately $.10 on the dollar

over 30 years on at least part of whatever fees and costs this Court ultimately awards."

Plaintiffs argue that to be made "whole" on the amount of fees and costs, a 1000%

enhancement would be needed.

## II.   STANDARD OF REVIEW

42 U.S.C.  § 1988 provides, in pertinent part, that "[i]n any action or proceeding to

enforce a provision of section[] 1983...of this title,...the court, in its discretion, may allow

the prevailing party, other than the United States, a reasonable attorney's fee as part of the

costs...." Attorney fees awarded under this section must be reasonable.  As the Supreme

Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), "[t]he most useful

starting point for determining the amount of a *reasonable* fee is the number of hours

*reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." (Emphasis

added).  In *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987), the Sixth Circuit,

citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6ᵗʰ Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."

In *Perdue v. Kenny A.*, 559 U.S. 542 (2010), the Supreme Court held that the lodestar amount is presumptively reasonable, and that an upward enhancement from that amount for "superior performance" is impermissible, absent "rare and exceptional" circumstances. *Id.* at 1674. In so holding, *Perdue* referenced the oft-stated principle that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id.* at 1673, quoting *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 566 (1986) (internal quotation marks omitted). Thus, once the lodestar is established, a court will generally not depart upward or downward based on factors such as the complexity of the case, the experience, reputation or ability of counsel, the amount involved or the results obtained. However, those factors are most certainly relevant in arriving at the lodestar figure in the first instance, particularly in determining whether the hours claimed were *reasonably* expended within the overall context of the litigation. *See Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial [lodestar] fee calculation hours that

were not 'reasonably expended'")[1]; *Aventis Cropscience, N.V. v. Pioneer Hi-Bred International, Inc.*, 2010 WL 2306677, *5, fn. 7 (M.D.N.C. 2010) (pursuant to *Perdue*, court "consider[s] the relevant *Johnson* factors only within the context of determining a reasonable number of hours and reasonable rate for the purposes of the lodestar calculation").

      In the final analysis, "[t]he primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999). *See also Coulter v. State of Tennessee, supra*, 805 F.2d at 149, *abrogated on other grounds* in *The N.E. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016) ("Legislative history speaks of 'fees which are adequate to attract competent counsel, but which do not produce windfalls,'..and cautions against allowing the statute to be used as a 'relief fund for lawyers'")(internal citations to Congressional Record omitted). Or, as the Fifth Circuit put it in *Johnson*, 488 F.2d at 720, "[C]ourts

---

[1] As to specific inquiries that would be included in the initial lodestar calculation, *Hensely* referenced *Johnson v. Georgia Highway Exp., Inc*., 488 F.2d 714, 717 -720 (5th Cir. 1974), which listed the following 12 factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

must remember that they do not have a mandate...to make the prevailing counsel rich." The party seeking an award of fees bears the burden of showing that the request is reasonable. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990).

Finally, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 438.

### III.   DISCUSSION

#### A.   Attorneys' Hourly Rates

In my original R&R, I accepted as reasonable Plaintiffs' claimed hourly rates for their lawyers: $350 per hour for lead counsel Bradley Shafer, $250 for co-counsel Andrea Pritzlaff,[2] and $200 for co-counsel Matthew Hoffer. In its response to the present supplemental motion, Defendant does not contest those rates.  In computing the lodestar, therefore, I accept Plaintiffs' counsel's claimed hourly rates.

#### B.   Fees for the Fee Petition Litigation

Under *The N.E. Ohio Coalition for the Homeless*, a court may not restrict recovery of attorney fees for fee petition litigation to 3% of the total, but rather assess the request for reasonableness. Thus, the Court's previous limitation on this category of fees, while appropriate under *Coulter v. Tennessee*, is no longer permissible under intervening Sixth Circuit case law.

---

[2] The billing records from January 11, 2012 forward do not reflect any time attributed to attorney Pritzlaff.

As I pointed out in my previous R&R, the parties have not taken to heart *Hensley's* admonition that fee requests should not result in a second round of major litigation.  Nevertheless, the issues involved in the fee request were substantial, and worthy of detailed scrutiny by the Sixth Circuit.  I am persuaded that the amounts requested for this category of attorney time in the pre-appeal petition are reasonable, and that Plaintiff should be awarded the full amount requested.  And with the exception of certain quarter-hour minimum billings in the appeal and post-appeal fee litigation (discussed below), that amount is reasonable as well.

## C.   Percentage Reduction of Original Fee Request

The Plaintiffs' total attorney fee request (as litigated in this Court before the appeal) before any reductions and not including the request for fee enhancement, includes attorney fees for the underlying litigation for the Shafer firm; $5,000 in fees for attorney Corbett Edge O'Meara; fees for the 2003 lawsuit; fees for the Conyers/Riddle criminal proceedings; and fees for litigating the fee issue. The breakdown of fees (excluding costs) requested is as follows:

Total Fees for Shafer firm in the 2006 case
 (including 2003 case and criminal case):          $1,044,994.50[3]
Fees for Attorney O'Meara:                        $5,000.00
Supplemental Fees for Fee Petition                $21,980.00

---

[3] This includes approximately $56,795.00 for preparation of the initial fee petition. *See* R&R [Doc. #162], at 13-14 and fn. 8.

-9-

TOTAL ATTORNEY FEES:                    $1,071,974.50[4]

The Sixth Circuit affirmed this Court's determination that Plaintiffs were not

entitled to any attorney fees or costs for the prior 2003 lawsuit or for the criminal

proceedings concerning Monica Conyers and Sam Riddle. Plaintiff claimed $141,746.00

in fees for the 2003 case and $16,200.00 for the criminal case, for a total of $157,946.00.

Deducting this amount from the above total leaves a request for **$914,028.50**. In addition,

as I now believe that the hours requested for fee litigation in the original petition were

reasonably expended, the total amount for that category–$78,775.00[5]–should not be

subject to any reduction. Hence, the amount of fees, other than those for the fee

litigation, subject to a percentage reduction is **$835,253.50**.

In my original R&R, which the Court adopted, I recommended an across-the-board

reduction of 60%. On remand, I have had the opportunity to give that recommendation a

second look, and while some reduction is appropriate, I now believe that my initial

assessment was overly harsh.

As I previously noted, and as the Sixth Circuit agreed, the Plaintiffs have not

justified a full award of fees for the BZA/Condition 18 issue or the Roe Plaintiffs.

Plaintiffs requested approximately $28,875.00 for the BZA issue and $48,905.00 for the

---

[4] Claimed costs for the underlying litigation ($30,475.85) and the initial fee petition ($1,616.58) should be paid in full, for a total of $32,092.43.

[5] $56,795.00 claimed in the initial request, plus $21,980.00 in the supplemental request.

Roe Plaintiffs, for a total of $77,780.00.  In the broader context of this litigation, these issues were insubstantial.  However, rather than denying any compensation, I recommend that the amount requested for these two categories be reduced by 80%, a reduction of $62,224.00.

This leaves the remaining amount scrutinized for a percentage reduction at **$773,029.50**.  Again, I am persuaded that a 60% reduction is unwarranted, particularly if fees for the 2003 case and for the Conyers/Riddle criminal proceeding are eliminated, and fees for the BZA and Roe Plaintiffs are reduced by 80%.  However, I am troubled by counsel's misreading of Justice Rehnquist's comment that a "reasonable" fee under § 1988 is necessarily one "that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 591-92 (1986)(dissenting opinion of Rehnquist, C.J.).  In effect, counsel shifts the determination of "reasonableness" away from the Court and to himself: if his rich clients are willing to pay for him to follow a grand jury proceeding in an unrelated criminal case or to watch the evening news, then Defendants are on the hook for those extravagances.  In my original R&R [Doc. #162], pp. 9-10, I explained as follows:

> "Secondly, I have in other cases cited *King World Productions, Inc. v. Financial News Network, Inc.,* 674 F.Supp. 438, 440 (S.D.N.Y.1987), for the proposition that '[w]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist these extravagances upon their unsuccessful adversaries.' *See Shields v. Merchants and Medical Credit Corp., Inc.*, 2011 WL 3566485, *6 (E.D.Mich. 2011). Plaintiffs, on the other hand, cite *Missouri v. Jenkins*, 491 U.S. 274 (1989) and Justice Rehnquist's dissenting opinion in *City of*

*Riverside v. Rivera,* 477 U.S. 561(1986), for the proposition that *King World Productions*, and by implication my opinion in *Shields*, are no longer good law. They quote Justice Rehnquist's statement in his *Rivera* dissent that the reasonableness of a fee is determined 'in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under § 1988 means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys.'

"Plaintiffs misread both *Jenkins* and Justice Rehnquist's statement in *Rivera*. The question in *Jenkins* was whether a fee award under § 1988 'should...compensate the work of paralegals and law clerks by applying the market rate for their work[.]'. The decision focused on the hourly *rate*, not on the reasonableness of the number of hours expended. Moreover, in *Rivera*, Justice Rehnquist was critical of what he termed 'the extraordinary number of hours put in by respondents' attorneys.' *Rivera*, 477 U.S. at 591. He stressed the principle set forth in *Hensley* that excessive hours that would not properly be billed to a client are not properly charged to the losing party, and would have rejected the plaintiffs' fee request, stating:

> 'I think that this analysis, which appears nowhere in the plurality's opinion, leads inexorably to the conclusion that the District Court's fee award of $245,456.25, based on a prevailing hourly rate of $125 multiplied by the number of hours which respondents' attorneys claim to have spent on the case, is not a "reasonable" attorney's fee under § 1988.'" *Id.* at 592.

"While an attorney is entitled to be compensated at a prevailing market hourly rate–the rate that an affluent client might be charged–nothing in *Jenkins* or in Justice Rehnquist's dissenting opinion supports the proposition that a losing party must be on the hook for each and every extravagance that a millionaire client might be willing to finance, no matter how excessive or tangentially related to the litigation or to the results obtained.  It is unlikely that Justice Rehnquist would have awarded § 1988 fees for counsel to watch the evening news. Most attorneys will claim that they used 'billing judgment,' but under *Hensley* and its progeny, it is the duty of the Court, not counsel, to determine whether or not the number of hours expended was reasonable. In exercising its discretion, a court should be mindful of the Congressional mandate that fee awards under § 1988 be

'adequate to attract competent counsel, but ... not produce windfalls to attorneys.' *Rivera*, 477 U.S. at 580, quoting Senate Report, at 6, U.S. Code Cong. & Admin. News 1976, p. 5913. *King World Productions* and *Shields* are correct statements of the law.

Indeed, in criticizing the *Rivera* plurality's affirmance of an attorney's fee award far in excess of the amount recovered, Justice Rehnquist pithily remarked, "The Court's affirmance of the fee award emasculates the principles laid down in *Hensley,* and turns § 1988 into a relief Act for lawyers." *Rivera* at 588.

As I pointed out in my previous R&R, counsel's claims for clearly non-compensable work such as the criminal proceedings, and for tangential activity such as communication with the media and watching television new casts doubt on the entire petition. I do suggest that counsel did not in fact expend time in these areas, but however willing his clients may have been to pay for these extravagances, and more to the point, for surplus time spent in preparing or reviewing the case, I agree with Justice Rehnquist and with the principles set forth in *Hensley* that § 1988 was not designed to produce windfalls for attorneys, but to provide fees "adequate to attract competent counsel."

Counsel has submitted a request for fees that is based on a fundamental misunderstanding of the concept of reasonableness. At the same time, counsel obviously worked very hard for his clients and obtained some favorable results, and again, I have already recommended a reduction for a portion of his request.  On balance, and without doing a line-by-line analysis of counsel's voluminous time sheets, I recommend that the Court exercise its discretion to reduce the remaining attorney fees by 10%, or $77,302.95,

leaving **$695,726.55**.

In summary, I recommend that Plaintiffs be awarded attorney fees and costs under their original petition (and not including appeal and post-appeal proceedings) as follows:

| | |
|---|---|
| Attorney Fees: | $695,726.55 |
| Fee Litigation: | $78,775.00 |
| Costs: | $32,092.43 |

| | |
|---|---|
| **Total:** | **$806,593.98** |

### D.   Appeal and Post-Appeal Fees and Costs

Defendant does not object to Plaintiffs' request for costs associated with the appeal of this Court's original fee determination and the present post-remand proceedings. I also find that those costs are reasonable. Plaintiffs should therefore be awarded costs for these proceedings in the amount of **$4,353.17**.

Nor does Defendant object to Plaintiffs' claim for 305.2 attorney hours associated with these proceedings. I agree that the number of hours expended is reasonable.

Defendant's only objection is that certain hours are billed in quarter-hour minimum increments, as opposed to one-tenth hour increments. Defendant has identified thirteen quarter-hour entries in counsel's billing statements for activity that would be extremely unlikely to have consumed more that one-tenth of an hour (6 minutes), if that. *See Defendant's Response* [Doc. #176], Appendix F, Pg. ID 5866-5873. These include claims for $87.50 for reviewing simple ECF notices. Counsel claims $87.50 for having

"received and reviewed order regarding magistrate [judge] disqualification" on April 19, 2012. However, the docket sheet indicates that this was a "text only" order (in other words, no written order generated) simply reassigning the case from Magistrate Judge Virginia Morgan (who had retired).[6]

Of course counsel is free to charge his clients in quarter-hour minimum increments. But this Court is tasked with determining whether the request is reasonable, not whether it represents what the traffic will bear in the market, what a wealthy client might be willing to pay, or even what the usual and customary rate is in the community. The Court has previously rejected minimum billing increments of .2 hours and .25 hours. In *Barrett v. Detroit Holding, LLC*, 2009 WL 3465366, *3 (E.D. Mich. 2009), Judge Zatkoff rejected billing in .2 hour increments, even though he found that to be standard practice in the industry:

> "Again, the Court agrees with Plaintiff that .2 hours is a standard billing practice in the industry. In assessing attorney fees, however, the Court is to award attorney fees only for the time and work that is reasonably expended by Plaintiff's counsel. Therefore, the Court does not believe that it is appropriate to mandate that Defendant pay Plaintiff attorney fees for every .2 increment billed by Plaintiff's counsel simply because that is the manner in which Plaintiff's counsel elected to enter his time. Once again, the Court shall award attorney fees only for such time as was reasonably expended by Plaintiff's counsel."

---

[6] I read the text order aloud, slowly. It took 15 seconds. At the requested minimum, this translates to $87.50 per minute, or $5,250.00 per hour.

Judge Zatkoff reiterated this assessment in rejecting quarter-hour minimum billings in *Bell v. Prefix, Inc*., 784 F.Supp.2d 778, 776 (E.D. Mich. 2011)("As previously determined by this Court (and upheld on appeal), it is appropriate and necessary to reduce such .25 increments by .15 hour to reflect tenth-hour billing.").  In *Van Loo v. Cajun Operating Co.*, 2016 WL 6211692, *5 (E.D. Mich. 2016), Judge Michelson, citing *Bell*, agreed, noting, "Courts have viewed billing in such increments with some suspicion." *See also Brumitte v. Astrue*, 2009 WL 3208594, *4 (E.D. Tenn. 2009)("[T]he Court reiterates that quarter-hour billing is disfavored in this district.").

In this case, the quarter-hour billing for mundane tasks that in some cases consume under one minute, and certainly no more than six minutes, is unreasonable in the context of a § 1988 request for attorney fees. Therefore, these 13 entries should be compensated in one-tenth hour increments, which results in a reduction from $1,062.50 to $425.00, a difference of $637.50.  I therefore recommend that Plaintiffs' request for attorney fees of $79,853.00 be reduced by $637.50 to **$79,215.50.**

In conclusion, and subject to reductions imposed pursuant to the Detroit bankruptcy proceedings, total fees and costs should be awarded as follows:

| | |
|---|---|
| Attorney Fees for Original Fee Petition: | $774,501.55 |
| Attorney Fees for Appeal and Post-Remand: | $  79,215.50 |
| **Total Attorney Fees:** | **$853,717.05** |
| Costs for Original Fee Petition: | $32,092.43 |
| Costs for for Appeal and Post-Remand: | $4,353.17 |

| | |
|---|---|
| **Total Costs:** | **$36,445.60** |
| **Grand Total:** | **<u>$890,162.65</u>** |

### D.     Request for Fee Enhancement

Under *Perdue v. Kenny A*, a fee enhancement above the loadstar amount is

impermissible absent "rare and exceptional circumstances."  Plaintiffs bear the burden of

supporting a request for enhancement with specific evidence. *Perdue*, 130 S.Ct. at 1673.

Here, Plaintiffs contend that exposure of their fees to reduction as a result of the Detroit

bankruptcy litigation is a basis for a "substantial" enhancement under *Perdue*, perhaps by

as much as 1000%.  They are wrong.

Plaintiff has not cited, nor has the Court found any cases where fees were

enhanced based on circumstances extrinsic to the litigation for which fees were awarded

in the first place.  And there is good reason for the lack authority for the proposition that

fees can be enhanced by virtue of a bankruptcy court restructuring a defendant's debt.

The Sixth Circuit affirmed this Court's previous denial of a fee enhancement based on a

consideration of factors intrinsic to this case.  Those are the only factors relevant to the

fee enhancement issue.  There is nothing essential about this case that differentiates it

from any other fee petition or award where the City of Detroit was the defendant.  If we

accept the argument that the bankruptcy court's order of confirmation justifies a fee

enhancement in the Plaintiffs' case, then it would permit a fee enhancement in every City

of Detroit case.  In effect, Plaintiffs are asking this Court to modify a final order of the

bankruptcy court.[7]

I recognize that the reduction of fees by virtue of the bankruptcy plan is a bitter pill for Plaintiffs to swallow.  But it does not, as Plaintiffs hyperbolically claim, "make a mockery of justice." Thousands of other creditors of the City of Detroit will endure the same consequences as Plaintiffs.  That is the nature of bankruptcy, and it is not a "rare and exceptional" circumstance as envisioned by *Perdue*.  Plaintiffs' request for a fee enhancement should be denied.

## IV.   CONCLUSION

I recommend that Plaintiffs' Second Supplemental Motion for Attorney's Fees and Costs (after remand) [Doc. #174] be GRANTED IN PART AND DENIED IN PART, and that Plaintiffs be awarded a total of **$890,162.65** in attorney fees and costs, subject to the orders of the bankruptcy court in the City of Detroit municipal bankruptcy case.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not

---

[7] It does not appear that Plaintiffs intervened in the bankruptcy proceedings.

preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6ᵗʰ Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6ᵗʰ Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 28, 2017


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 28, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen

-19-